In the Matter of the Application of the KINGS COUNTY ELEVATED RAILROAD COMPANY to acquire title to lands of ERNST NATHAN.

Same as to lands of JOHN O'BRIEN.<br/>Same as to lands of MARY DUANE.

An application under the act of 1875 (Chap. 606, Laws of 1875), providing for the construction of steam railways in the counties of the State, for the appointment of commissioners to determine as to the necessity of the proposed road, was signed by ten more than the requisite number of householders and taxpayers. It was verified by one of the subscribers, who stated in his affidavit that he knew each and all of the subscribers except five and saw them sign. Another subscriber swore to the same as to four of the five, and a Supreme Court justice certified that the statements were sworn to before him. *Held*, that the verification was sufficient; that it was not essential that the application should be verified by each of the subscribers.

The proposed railways were located in the city of B. The common council of the city, by resolution, gave its consent to the construction of the roads as located by the commissioners, but attached certain conditions to the assent, aside from those provided by the act and imposed by the commissioners. *Held*, that, conceding the common council could qualify its consent by such reasonable conditions as it might think necessary (as to which *quære*), as the only conditions so imposed which could be considered reasonable and necessary, was one not to be performed until the road was completed and in running order, it did not affect the validity of the organization of the corporation.

Among the conditions imposed by the common council was one that the company should consent that the city assessors might arbitrate all damages caused to property owners by the construction of the road, and one fixing the times within which different portions of the road should be constructed, different from that prescribed by the commissioners. *Held*, that these conditions were neither reasonable nor lawful as they related to matters over which the legislature and the commissioners had entire control, and were repugnant to the legislative requirements

in the one case and to the condition imposed by the commissioners in the other, and their action could neither be superseded nor affected by that of any other body.

The articles of association, as prepared by the commissioners, contained a proviso which suspended the running of the time limited for the completion of the work during the time unavoidably consumed by the pendency of legal proceedings, or by the delay or interference of the public authorities " or otherwise." *Held*, that the time during which the company, without fault on its part, had no legal ability to commence or carry on the work, should not be deemed to form any part of the allotted period.

The resolution of the commissioners was passed June 30, 1878, the time limited for the completion of the work was August 1, 1879, the articles were not filed and so the corporation had no corporate existence until January 6, 1879; immediately after that date it made efforts to obtain the consent of property owners, and failing in that, applied to the Supreme Court for the appointment of commissioners as prescribed by the act (§ 4.) The report of the commissioners was made April 26, 1879, and on the same day application was made for its confirmation. This was opposed, and the controversy was not finally disposed of until September, 1880, when it ended in a decision adverse to the company. It thereafter made continuous efforts to obtain the requisite consents of property owners, which it succeeded in doing December 2, 1885. *Held*, that the commissioners had authority to provide for the contingencies expressed in the resolution, and the effect of it was to allow a period of thirteen months for the completion of the work; and that the time did not begin to run until the requisite consents were obtained.

The articles, as required by the statute (§ 7), provided for the release and forfeiture to the supervisors of the county of all rights acquired by the corporation, in case the road was not completed in time and upon the conditions provided. *Held*, that assuming there was a default on the part of the company, this did not annul or dissolve the incorporation, or work a forfeiture; that until a judgment of forfeiture was rendered against the company it was entitled to proceed with the work; and, therefore, that any such default was not an answer to an application to acquire an easement for the purposes of the road.

*In re B. W & N. R. R. Co.* (72 N. Y. 245; *S. C.* 75 id. 335); *B. S. T. Co.* v. *City of B.* (78 id. 524), distinguished.

The commissioners located fifteen different routes, but fixed the time within which five of them only should be completed. *Held*, that, conceding the routes to which no time had been affixed, had not been legally designated, and so that as to them the corporation acquired no right or franchise, this did not affect the corporate rights of the petitioner or its right to construct railways on the five routes, in reference to which the time was properly designated.

*In re N. Y. Cable Co.* (104 N. Y. 1), distinguished.

Also, *held*, that the petitioner, upon filing the certificate and articles as prescribed by the act (§ 9), became a corporation.

*In re Kings Co. El. R. R. Co.* (41 Hun, 425) reversed.

(Argued October 4, 1886; decided March 22, 1887.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made July 3, 1886, which affirmed an order of Special Term, the nature of which order, as well as the material facts, are stated in the opinion. (Reported below, 41 Hun, 425.)

*George W. Shea* for appellant. The petitioner on failing to obtain the requisite consents of the landowners was not deprived of its franchise. Its failure put in abeyance its right to proceed with the construction of its proposed road until the obstruction was removed. (*In re B'klyn Steam Transit*, 78 N. Y. 529–531; *In re B. W. & N. R. R. Co. Case*, 72 id. 245.) The act of 1875 (chap. 606) conforms to the requirements of the Constitution. (Const. art. 3, § 18; Laws of 1875, chap. 606, § 4; Laws of 1881, chap. 518, § 1; *In re El. R. R. Co.*, 70 N. Y. 343, 344.) Delay caused by the wants of the consents is "such unavoidable delay" within the statute. (*Movius* v. *Arthur*, 5 Otto, 147; *Smythe* v. *Fiske*, 23 Wall. 381.) The act of 1881 (chap. 518) is constitutional. (Jour. of Const. Con. Rep. "Relating to Government of Cities," 446–448; *In re N. Y. El. R. R.* 70 N. Y. 343, 344.) All of the property-holders, being, in the language of the law, "united in interest" and in the proceeding as petitioners, the verification is not merely sufficient, but is in precise conformity to the law, when made by "one of them who is acquainted with the facts." (*Andrews* v. *Stevens*, 5 Sandf. 609.)

*Leslie W. Russell* for appellant. Equity abhors forfeiture. It exacts no penalties where good conscience justifies delay. (*Jackson* v. *Tapping*, 1 Wend. 388; *Hasbrook* v. *Paddock*, 1 Barb. 635; *Linden* v. *Hepburn*, 3 Sandf. 668.) The omission to perform a duty imposed on a corporation does not

*ipso facto* destroy the corporate character or existence. (*El. R. R. Cases*, 70 N. Y. 327; *Denike* v. *Cement Co.*, 80 id. 599; *Bk. of Niagara* v. *Johnson*, 8 Wend. 645; *People* v. *Man. Co.*, 9 id: 351; *Mickeles* v. *Rochester Bk.*, 11 Pai. 118; *Welch* v. *Silliman*, 2 Hill, 491; *Fonda* v. *Sage*, 46 Barb. 110; *Thompson* v. *Harlem*, 3 Sandf. Ch. 625; *Nicoll* v. *N. Y. & E. Co.*, 12 N. Y. 121; *Patten* v. *N. Y. El. R. R. Co.*, 3 Abb. [N. C.] 306; *Towle* v. *Remsen*, 70 N. Y. 303, 312; *Sewell Falls Co.* v. *Fiske*, 23 N. H. 171; *Schulenburg* v. *Harriman*, 21 Wall. 45, 63; *Chesapeake* v. *Ohio Co.*, 4 G. & J. [Md.] 121.) The consents of the property owners were conditions precedent to the right to go ahead. (Const., art. 3, § 18; chap. 606 of the Laws of 1875, § 4.) The limitation of time in the act can only refer to the time elapsing after the company had power to go ahead. (Ang. on Limit. § 42.) The conditions annexed to the consent of the common council of 1879 were unwarranted and unlawful. (*Finlay* v. *King's Lessee*, 3 Pet. 364; 2 Washb. on R. Pr. 8, 12 [4th ed.]; *Towle* v. *Remsen,* 70 N. Y. 303, 311; *Woodworth* v. *Paine*, 74 id. 196; *Brooklyn C. R. R.* v. *Brooklyn R. R.*, 32 Barb. 358; 2 Wood's R'y Law, 987; *N. O., etc., R. R. Co.* v. *Delamore*, 114 U. S. 501.) The consents of the local authorities and of the abutting owners, as required by the Constitution and the statute, must be, in their nature and office, agreements or easements, not· mere licenses. (*Mumford* v. *Whitney.* 15 Wend. 380, 3 Kent's Com. 452; *Rerick* v. *Kern*, 14 Serg. & R. 267, 272.) The order is appealable. It involves a substantial right, and is a final order in a special proceeding. (*In re Rens. & Sar. Co.*, 43 N. Y. 137; *In re B. W. & N. R'y Co.*, 72 id. 245; 75 id. 335.)

*George F. Comstock* for appellant. The Rapid Transit Act is constitutional. (*N. Y. El. R. R. Co. Case*, 70 N. Y. 327.) A clause of forfeiture upon non-performance of a condition does not *per se* disturb·the right which is the subject of the grant of gift; but is, in judgment of law, merely the justification for an entry and taking of possession, or for a

jndicial proceeding to ascertain and enforce such forfeiture. (*N. Y. El. Ry. Co.*, 70 N. Y. 327–337; *In re Steam Transit Co.*, 79 id. 529; *Sewals Falls Bridge* v. *Fisk*, 13 Fost. [N. H.] 177; *Willanet Falls Co.* v. *Kittridge*, 5 Sawyers [U. S.], 44–47; *Frost* v. *Frostberg Coal Co.*, 24 How. [U. S.] 283; *Irwin* v. *Lumbermen's Bk. of Penn.*, 2 W. & S. 190; *Passumpsic R. R. R. Co.* v. *Bailey*, 24 Vt. 465, 475; *Atcha-falaya Bk.* v. *Dawson*, 13 La. 315; *Reg. of University* v. *Williams*, 9 G. & J. 365, 426; *Atlanta* v. *Gas L. Co.*, 71 Ga. 106, 125; *White* v. *State*, 69 Ind. 373, 379; Angell & Ames on Corp., § 70.) The conditions imposed by the common council as qualifying its consent of May 26, 1879, were conditions subsequent to the grant. (*Finlay* v. *King's Lessee*, 3 Pet. 346; *Martin* v. *Ballou*, 13 Barb. 119, 133; 2 Blackst. Com. [old ed.] 156, [Vol. 1 of Chitty's ed.]; 2 Washb., 8–12; *Nichols* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121; *Towle* v. *Remsen*, 70 N. Y. 303, 309, 310, 311; *Davis* v. *Gray*, 10 Wall. 203.) Corporate property under the Constitutions and laws takes the same protection as private property. (23 Wend. 540, 576; 12 N. Y. 121; 20 Barb. 455; 33 id. 79, 87; 46 id. 33.) The bond for gross earnings and the agreement to arbitrate concerning damages have never been called for, it must be demanded before defendant can be subjected to a forfeiture, although the time of payment or performance is specified. (*Wilson* v. *Little*, 2 N. Y. 443.) Conditions subsequent leading to a forfeiture receive a benign and liberal interpretation. (*In re Conington's Will*, 6 Jur. [N. S.] 992; 16 Wall. 203, 223; *Ottaguecher* v. *Newton*, 20 Rep. 635.) Conceding technical forfeiture, the court, by virtue of its equity powers, would relieve against the forfeiture on equitable principles and save the estate. (23 Wend. 540, 576; *Davis* v. *Gray*, 16 Wall. 203.) The legislature has distinctly provided that failure to construct shall not (except within the city of New York), be a cause of forfeiture of corporate powers. (Laws of 1879, chap. 350; Laws of 1882, chap. 405; Laws of 1881, chap. 518.) · The appellant's charter was a contract between the State and the

company, and when the conditions precedent were performed, it became as irrevocable as any contract can be. (*N. Orleans* v. *Delamore*, 114 U. S. 501; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Brooklyn Co.* v. *City*, 78 N. Y. 525.)

*Leslie W. Russell, George Shay* and *George F. Comstock* for appellant. The Fulton street route and the other time routes were properly granted, and are valid railway routes, whatever may be said as to those which were granted without any time provision expressed. (*Earl of Clanricarde's Case*, Hobart, 277; 15 N. Y. 123; 6 Taunt. 363; 2 Wilson, 348; 11 Coke, 27; 22 Wend. 487; 2 Pet. 235; 5 Cow. 564; *People* v. *Kenney*, 96 N. Y. 295, 302, 303; *People* v. *Bull*, 46 id. 57; *People* v. *Briggs*, 50 id. 553; *Comm.* v. *Kimball*, 24 Pick. 362; *Willard* v. *People*, 4 Scam. [Ill.] 461; *Mayor, etc.* v. *De Chert*, 32 Md. 369; *Chitty on Cont.* 694; 4 Kent's Com. [11th ed.] 221; *Curtiss* v. *Leavitt*, 15 N. Y. 96; *Savage* v. *Burnham*, 17 id. 561, 576.) The legislature left it to the judgment and discretion of the commissioners to determine what routes or parts of routes should be subjected to time limitations, and what need not be, thus leaving routes or parts of routes to be affected only by the rules of law, one of which is, that when no time is prescribed for performance of a condition subsequent, it must be performed within a reasonable time. (2 Washb. 8–12.)

*George W. Wingate* for Mary Duane, respondent. A municipality whose consent is necessary to the construction of a railroad in the public street, may impose such conditions as it may think necessary in granting its consent, and such conditions are binding. (*N. Y. & H. R. R. Co.* v. *Mayor, etc.*, 1 Hilt. 562; *Mayor, etc.* v. *Troy & L. R. R. Co.*, 49 N. Y. 657; *In re N. Y. Cable R. Co.*, 40 Hun, 27; *Pac. R. R. Co.* v. *Leavenworth*, 1 Dill. [U. S.] 393; *St. Louis R. R. Co.* v. *Capps*, 67 Ill. 167; Laws of 1884, chap. 252, p. 309; Laws of 1886, chap. 642, p. 919; *Seeger* v. *Mayor, etc.*, Daily Reg., March, 1886; *Philadelphia* v. *Lomb. & So. St. P. R. Co.*, 3 Grant's Cas. [Pa.] 403; *Ind. & Cin. R. R. Co.* v. *Lawrenceburg*, 34

Ind. 305 ; *Detroit* v. *Det. City R. R. Co.*, 37 Mich. 558 ; *Davis* v. *Gray*, 16 Wall. 231.)   The consent terminated upon the failure of the appellant to comply with the conditions contained in it.   ( *W. U. Tel. Co.* v. *Balt. & O. R. R. Co.*, 20 Fed. R. 572 ; *Brown* v. *Bowen*, 30 N. Y. 520.)   The consent of 1883, being for different streets, upon different conditions, and to the appellant by name (while the consent of 1879, was to any elevated railroad), was a new and inconsistent consent and was a repeal of the consent of 1879.   (*Farnsworth* v. *Minn. & Pac. R. R. Co.*, 92 U. S. 50–67.)   A grant of the right to use the streets to a railway corporation must be construed most strongly against the corporation, and any ambiguity or doubt in favor of the public, so that nothing shall pass thereby but what appears to have been clearly intended.   (*Burns* v. *Multnomah R.*, 25 Fed. R. 177, 185 ; *Richmond R. R.* v. *Louisa R. R. Co.*, 13 How. [U. S.] 81 ; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 544 ; *Rice* v. *R. R. Co.*, 1 Black, 360 ; *Sprague* v. *Birdsall*, 2 Cow. 419 ; *Bridgewater & U. Plank-road* v. *Robbin*, 22 Barb. 662 ; *Cayuga B. Co.* v. *Mozer*, 2 Paige, 116 ;  6 Wend. 85 ; *Sharp* v. *Spier*, 4 Hill, 76 ; *Corwin* v. *Mounts*, 3 Barb. 341 ; *Wash. Cem.* v. *Prosp. Park & C. I. R. R.*, 68 N. Y. 59 ; 4 Hill, 76 ; *Nicoll* v. *N. Y. & L. E. R. R. Co.*, 12 N. Y. 121, 130, 131 ; *Bennett* v. *Culver*, 97 id. 250.)   A license is a mere authority, passes no interest and may be revoked.   (*Davis* v. *Mayor, etc.*, 4 Kern, 506 ; *Norfolk Cont. R. R. Co.* v. *Mayor, etc.*, 21 Md. 105 ; *Oakland R. R.* v. *O. B. & F. R. R.*, 45 Cal. 365 ; *Towle* v. *Remsen*, 70 N. Y. 303, 311 ; *Brooklyn St. Trans. Co.* v. *City of Brooklyn*, 78 id. 525 ; *In re Brooklyn W. & N. R. R. Co.*, 72 id. 242 ; *In re N. Y. Cable R. Co.*, 40 Hun, 1.)   Even if the law in regard to conditions subsequent was as is contended for by the petitioner herein, it has no application to the present case, for the reason that the petitioner never received any grant from the common council under the resolution in question.   (*N. Y. Cable Co.* v. *Forty-second St. R. R.*, *infra*.) It is immaterial that there was no other company then existing than the appellant, or that the common council had before it a

committee's report which referred to that company. (*Farns-worth* v. *Minn. & Pac. R. R.*, 92 U. S. 68.) The common council had power to revoke the consent of 1883, when it did. (*Jameson* v. *Milliman*, 3 Duer, 258; *People ex rel. Irwin* v. *Sawyer*, 52 N. Y. 296; *People ex rel. Angel* v. *Hatch*, 1 T. & C. 113; *People ex rel. Youmans* v. *Wagner*, id. 221; *People ex rel. Yawger* v. *Allen*, 58 N. Y. 539; *Town of Springport* v. *Teut. Sav. Bk.*, 84 id. 403; 75 id. 397.) The common council could not, by a resolution of December 28, 1883, restore to the corporation the life which it had lost by the failure to comply with its articles of association. This could not even be done by the legislature. (*In re B. & W. R. R. Co.*, 75 N. Y. 336.) The consent was void because it was for a different route than that fixed by the appellant's charter. (*People* v. *Albany & Vt. R. R.*, 24 N. Y. 261–267.) This is not a case where legal proceedings were necessary to declare a forfeiture and terminate the existence of the corporation. (*In re N. Y. El. R. R.*, 70 N. Y. 336; *Brooklyn Stm. Trans. Co.* v. *Brooklyn*, 78 id. 525; *In re Brooklyn W. & N. R. R.*, 72 id. 245; *Oakland R. R.* v. *O. B. & F. R. R.*, 45 Cal. 365, 373, 378; *Fountain* v. *Phœnix Ins. Co.*, 11 Johns. 293; *Kennedy* v. *Strong*, 14 id. 129; *Bennett* v. *Am. Art. Un.*, 5 Sandf. 614; *N. Y. H. & N. H. R. R.* v. *Boston H. & E.*, 36 Conn. 196; *U. S.* v. *One Thousand Nine Hundred and Sixty Bags of Coffee*, 8 Cranch, 398; *U. S.* v. *Grundy*, 3 id. 337; *Borland* v. *Lewis*, 43 Cal. 569; *Com'rs* v. *E. & N. E. R. R.*, 27 Pa. St. 339; *Brower* v. *Appleby*, 1 Sandf. Supr. 158; *Farnsworth* v. *Minn. Pac. R. R.*, 92 U. S. 68; *Grand Rapids St. Ry. Case*, 48 Mich. 433.) If the statute contemplated a transfer to the supervisors the title passed to them on the contingency occurring, and without any suit or transfer being necessary. (Washb. on Real Property, 475; *Willard* v. *Henry*, 2 N. H. 120; *Hamilton* v. *Elliott*, 5 S. & R. 375; *Andrews* v. *Seuter*, 32 Me. 394.) If any doubt existed in regard to the forfeiture by the petitioner of its franchise, it was removed by chapter 393 of the Laws of 1882, amending the Rapid Transit Act. (*Borland* v. *Lewis*,

43 Cal. 569.)    The rule, which prevents the existence of a corporation being questioned collaterally does not apply where a corporation is attempting to condemn land under the power of eminent domain.    (*In re B. & N. R. R.*, 72 N. Y. 245.) *Brooklyn Stm. Trans. Co.* v. *Brooklyn*, 78 id. 531 ; *In re N. Y., L. & W. R. Co.*, 25 Hun, 224 ; *In re Cable Co.*, 40 id. 2–12 ; *At. & Pac. R. R. Co.* v. *St. Louis*, 66 Mo. 226, 250 ; *Peavy* v. *Calais R. R*, 30 Me. 499 ; *Morris & E. R. R.* v. *Central R. R.*, 31 N. J. 207 ; *Reg.* v. *Lon. & N. West R. R. Co.*, 6 E. L. & Eq. 220 ; 1 A. M. R. R. Cases, 150.)    The fact that the performance of a condition upon which a railroad company has obtained a right to construct its road would involve such an enormous expense as to be unreasonable, con- stitutes no excuse for its failing to do so.    (*Queen* v. *Scott*, 3 Q. B. 543.)    The delay of the company in constructing its road arising from its inability to get the consent of the property holders to such construction, could not be allowed by the commissioners as a reason for extending the time within which the corporation was authorized to construct its road.    (*In re N. Y. Cable Co.*, 40 Hun, 1 ; *N. Y. Cable Co.* v. *Forty- second St. R. R., supra.*)    The petition of the property owners on which the commissioners were appointed who formed the appellant company was fatally defective because not verified by all the petitioners.    (*Andrews* v. *Storms*, 5 Sandf. 609 ; *Hull* v. *Ball*, 14 How. Pr. 305 ; *Jay* v. *Hammond*, 10 Abb. Pr. 66 ; Code, § 525.)    The commissoners were bound to specify a specific date within which the company was to be created, or its rights and franchises should be forfeited.    (*In re N. Y. Cable Co.*, 40 Hun, 2, 18 ; *N. Y. Cable Co.* v. *Forty-second St. R. R.*, Daily Reg., October 3, 1885.)

*Israel Minor, Jr*, for Ernst Nathan, respondent.    The time limited for the completion of the company's road, together with all extensions thereof, having expired and the company not having made a beginning of its construction within that time, nor ever completed any portion of its road its rights and franchises having become forfeited by operation

of the statute. (Laws of 1875, chap. 606; *Oakland R. R. Co.* v. *O. B. & F. V. R. R.* 45 Cal. 365, 375; *U. S.* v. *Grundy*, 3 Cranch, 351; *N. Y. H. & N. R. R. Co.* v. *B. H. & E. R. R. Co.*, 36 Ct. 196; *Borland* v. *Lewis*, 43 Cal. 569; *Brooklyn St. Tr. Co.* v. *City of Brooklyn*, 78 N. Y. 525.) The company never having offered any bond to secure payment of two per cent. of its gross receipts to the city, nor agreed to submit to the arbitrament of the assessors as required by the resolution of May 26, 1879, until the 31st of March, 1886, nearly six years after expiration of the time allowed in said consent for the completion of its road, has no rights under the consent contained therein. (*Davis* v. *Gray*, 16 Wall. 231; *N. Y. & Harlem R. R. Co.* v. *Mayor, etc.*, 1 Hilt. 562; *Mayor, etc.*, v. *T. & L. R. R. Co.*, 49 N. Y. 657; *Norfolk Cont. R. R. Co.* v. *Mayor, etc.*, 21 Md. 105; *Ind. & Cin. R. R. Co.* v. *Lawrenceburg*, 34 Ind. 305; *City of Detroit* v. *Det. C. R. R. Co.*, 37 Mich. 558; *Phila.* v. *L. and S. St. Pass. R. Co.*, 3 Grant's Cas. [Pa.] 403; *Queen* v. *Scott*, 3 Q. B. 543; *Davis* v. *Mayor, etc.*, 4 Duer, 506.) Individual property cannot be condemned for a right of way in favor of a company whose time to complete its road has expired, even though its dissolution has not been decreed. (*Atlantic & Pac. R. R.* v. *St. Louis*, 66 Mo. 226, 250; *Peovy* v. *Calais R. R.*, 30 Me. 499; *M. & E. R. R.* v. *C. R. R. Co.*, 31 N. J. 207; *Reg.* v. *Lon. & N. W. R. R. Co.*, 6 E. L. & Eq. 220.) Any property-owner whose property rights are sought to be interfered with may question the company's rights and franchises in a proceeding brought for condemnation of his property (*Brooklyn St. Tr. Co.* v. *City of Brooklyn*, 78 N. Y. 531.)

DANFORTH, J. The appellant, by proceedings instituted April 8, 1886, sought to have an easement or interest appurtenant to certain lands abutting on Fulton street, in the city of Brooklyn, appropriated to its use for railway purposes, and to that end applied by petition to the court at Special Term for the appointment of commissioners of appraisal. It was there denied, not in the exercise of discretion, but upon the ground

as stated in the order, "that the petitioner had never obtained the consent of the local authorities of the city of Brooklyn to the construction of its road in Fulton street."

Upon appeal to the General Term, the order appears to have been affirmed upon the further ground that by reason of certain defaults on its part, or non-compliance with conditions imposed by its articles of association, the petitioner had lost its corporate powers, including the right to take proceedings for the condemnation of private property for public use.   The petitioner was organized as a railway company under chapter 606 of the Laws of 1875, which provides for the " construction and operation of a steam railway or railways in the counties of this State," and on the performance of certain conditions imposed by that act, is permitted to exercise the power of eminent domain over lands, or any interest therein necessary for the construction or operation of its road, in the manner or by the special proceedings prescribed thereby. (§ 17.)    For that purpose there must be a company duly incorporated, and which, having complied with the conditions named in the act, has the power and the intention in good faith to construct and finish a railroad to and from the places named in its articles of association (§ 18), and unless these facts are alleged, and upon hearing found to exist, the petition cannot be maintained.

It is not denied that the petition at the bottom of these proceedings was in the form, and set out all the facts, made essential by statute, but the question raised by the answer to the petition in each case, and now relied upon by the learned counsel for the respondent, includes not only those on which the Special and General Terms of the court below put their decision, but one going to the very existence of the petitioner. So we have before us three material propositions :

1st. That the company never acquired a corporate existence. 2d. That it never performed the conditions imposed by the act of 1875 (*supra*), and, therefore, lost its franchises.   3d. That it never obtained the consent of the local authorities having control of that portion of Fulton street upon which it was proposed to construct the railway.

*First.*  The act relating to the formation of these corporations (Laws of 1875, *supra*) prescribes that whenever it shall be made to appear to the supervisors of the county or the mayor of the city, as the case may be, by the application of fifty reputable house-holders and taxpayers, verified upon oath before a justice of the Supreme Court, that there is need in their county of a steam railway, commissioners shall be appointed who, if they find such railway necessary, shall fix and determine its route or routes, "provided that the consent of the owners of one-half the property bounded on (or in lieu thereof, the consent of commissioners appointed by the Supreme Court), and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railway, be first obtained " (§§ 1, 5). In this case the application on which commissioners were appointed to determine the necessity of the proposed road is conceded to have been signed by the requisite number of qualified persons and to have been sufficient in form.   But it was verified by one of the subscribers only, and, therefore, it is contended by the learned counsel for the respondents, that it was insufficient to give jurisdiction to the mayor to entertain and pass upon the application, his claim being that each subscriber should have made oath.

We think the statute was satisfied.   It requires only that the application shall be " verified upon oath " before a Supreme Court judge, that is, proven by a witness upon oath before him to have been really signed by the persons whose names are thereto appended.   Sixty names appear upon the application. One affiant stated that he knew each of the persons represented by those names, save five, and saw them sign it; another said the same as to four of these five, and a Supreme Court judge certified that these statements were sworn to before him.

The application was, therefore, duly verified, and the order appointing the commissioners justified.   It was made on the 23d of March, 1878, and it is conceded that the persons thus appointed, duly qualified as required by law (§ 4), and entered upon and executed their duties.   They thereupon, by public

notice, invited the submission of plans for the construction and operation of such railway " upon the route or routes, and in the locations theretofore determined by them " (§ 5), and fixed and determined many other things relating to the running of the road and the amount of capital stock of " the company to be formed for the purpose of constructing, maintaining and operating such railway " (§ 6).

It is by the act *supra* made the duty of the commissioners to prepare articles of association, for a company to be formed and to set forth therein the particulars, requirements and conditions imposed by the commissioners, pursuant to the sections above referred to, and which the statute says, " shall provide for the release and forfeiture to the supervisors of the county, of all rights and franchises acquired by such corporation," in case such railway or railways shall not be completed within the time and upon the conditions therein provided (§ 7). It should be observed that up to this time no company was in existence to profit by the necessity which had been declared to exist for a steam railway, or which could claim the right to construct or maintain it. The next statutory step is in that direction, and the scheme was completed when, after notice, capital stock had been subscribed for and the subscribers met for organization and the election of directors (§§ 8, 9). The commissioners were then required to deliver to the directors a certificate setting forth the articles of association theretofore prepared by them, and the organization of the company, which when filed with an affidavit, showing the subscription and payment in of stock, and " that it is intended in good faith to construct, maintain and operate the railway or railways in such articles of association mentioned," constituted the persons who had subscribed them a corporation by the name specified therein, with the powers and privileges, and subject to the duties and restrictions of corporations (§ 9), and a copy of such certificate and affidavit duly certified, is made " presumptive evidence of the incorporation of such company, and of the facts therein stated."

All these prescribed duties on the part of the commission-

ers and acts on the part of the directors were performed and a copy of their report, certificate and articles of association, and affidavit certified by the secretary of state, was in evidence. It showed that the originals were filed January 6, 1879, and thus it appeared that the company on that day acquired the franchise of being and acting as a corporation.

Its right to build and operate a railway in the streets of Brooklyn was, however, limited, not only by the Constitution of the State, but as we have seen, by the statute of 1875, *supra*, and also by the very terms of the articles of association. The routes over which it might construct and operate its road were, as fixed by the commissioners, fifteen in° number, and among others, one on or through Fulton street. They directed that certain specified portions of the railway should be constructed and ready for operation at specified times, one within one year from the 1st of August, 1878, two within three years from the 1st of August, 1878, one within one year and six months from the 1st of August, 1878, but at the same time provided that the time, if any, unavoidably consumed by the pendency of legal proceedings or by the delay or interference of the public authorities in refusing or neglecting to give their consent to the use of the streets and avenues as required in section 4 of chapter 606 of the Laws of 1875, "or otherwise," should not be deemed a part of any period of time within which the construction and completion of the railway or railways is required to be made, but be added to each of the periods otherwise limited for such construction and completion. And as they were authorized to do by statute (Laws of 1875, § 7, *supra*), the commissioners declared that, in case the several portions of such railway or railways shall not be completed each within the time and upon the conditions hereinbefore, and as to such portions provided for, the rights and franchises acquired by such corporation shall be released and forfeited to the supervisors of the county of Kings. The work through the route in question was not completed within the time mentioned, and so it is said a forfeiture is incurred and the company made incapable of going on. The right to do so under any

circumstances was dependent upon the consent of a certain proportion of the abutting owners, or its equivalent, and the consent also of the local authorities. It appears that the necessary consent of property-owners had been obtained before the institution of these proceedings, and various action had been taken on the part of the municipal authorities. The sufficiency of that action is a material and difficult question in the case.

On the 30th of June, 1879, the common council of the city of Brooklyn, by resolution, declared " that this common council do hereby consent to the construction and operation of an elevated railway or railways, over, along and through the following routes, fixed, determined and located by the rapid transit commissioners " (meaning the commissioners whose action has already been referred to), and describing the routes specified in the articles of association, and among others the one in question; following this resolution were two others, not important here. Then come these words: " Provided that the consent of the common council is hereby given upon the following conditions: Non-compliance on the part of the company with all or any one of which shall render this consent void."

So far as the respondent deems them material as bearing upon this controversy, the conditions are (1) that the company shall enter into a good and sufficient bond to the city in the sum of $200,000, that they will pay into its treasury, semi-annually for the benefit of the city, two per cent of its gross receipts. (2) That they shall consent that the city assessors shall arbitrate all damages caused to property owners by the construction of the road. (3) That portions of the railway shall be completed at certain times specified, the latest of which is June 1, 1881. On the part of the appellant the claim is made that the consent embodied in the first resolution became at once valid and effectual, and fixed the municipal authorities of Brooklyn so effectually that the company must be deemed to have thereby met and satisfied the requirement of the Constitution and statute and the exaction of the articles

of association, each of which requires the consent of the public authorities to the use of the streets and avenues for railway purposes. In effect their contention is that all of the matter set forth in the resolution of June 30, 1879, save that consent, was outside the power of the common council, and, therefore, that the decision of the Special Term, in which a contrary conclusion was reached, should have been reversed. On the other side it is insisted that a municipality, whose consent is necessary to the construction of a railway in the public streets, may impose such conditions as it thinks necessary in granting its consent, and that the company to whom it is given cannot enjoy the benefit while it rejects the conditions. This claim treats the transaction as a contract between parties having full power to treat, assumes that the commissioners had no other power than to determine the character of the railway structure, and that it was left to the local authorities not only to decide whether they would consent to its erection in their streets, but if so, upon what terms. This seems to me to be a very imperfect view of the scheme formulated by the act of 1875.

In pursuance of it, before the organization of any company was possible, it had been determined that a steam railway was necessary, and acting under an exclusive power given to them, commissioners had fixed its route through the street in question, and determined the manner and time of its construction. All this was done because of the ascertained public necessity for such a railway, and after that it remained to find a company willing to build the road in the manner and at the time prescribed, and for the common council of the city by their consent to enable them to do so. But neither the company when organized, nor the common council could add to, or take away from the terms or the conditions before provided and imposed by the commissioners. The company by its formation accepted them; the common council need not consent, but if they did, the company, so far as the city was concerned, could proceed with the undertaking according to the charter, which the State through its agents, the commissioners, had

prepared for them. I find nothing in the cases or statutes cited by the respondents which calls for a different interpretation of the act of 1875, and to hold otherwise would enable the common council to put itself in the place of the commissioners, and assume a function which had been delegated by the legislature to the commissioners as independent public officers. It is, I think, a sufficient answer to say that such power of substitution is not within the language or the intent of the statute, and to interpolate it would greatly weaken, if it did not altogether destroy the utility and force of provisions which have relation to the public necessity for means of transportation " for passengers, mail or freight." The franchises conferred upon the city by the legislature were public property and remained subject to its control. It follows that the power contingently conferred by the legislature to construct the railway became absolute, for the conditions imposed upon its exercise had both been performed. The abutting owners had consented and so had the municipal authorities. To that extent the object, which the legislature had declared to be one of public necessity, was accomplished.

Subsequent legislation is not without importance as throwing light upon this question. The act of 1884, chapter 252, dispenses with the freeholders' petition, requires no determination as to the necessity for rapid transit, but on the other hand provides that the local authorities, before acting upon an application for their consent, shall give public notice thereof, and of the time and place where it will be considered, and when granted, it shall be upon the express condition that the conditions of the statute shall be complied with, or the local authorities at their option may provide for the sale of the franchise at public auction, subject to all the provisions of the act as to construction, operation, etc., of the railway. It then declares that every corporation formed under the provisions of that act (1884), in cities having 250,000 inhabitants or more, shall pay annually into the city treasury a percentage, at first five per cent, and afterward of three per cent of its gross receipts, and that in other cities or villages the local authori-

ties shall have the right to require, as a condition to their consent to the construction and operation of the road under that act, the payment annually of such percentage of gross receipts, not exceeding three per cent, into their treasury, as they may deem proper. A failure on the part of the company to make payment of the sum prescribed involves a penalty of five per cent additional each month on such percentage until it is paid (§ 8). These provisions would have been entirely unnecessary, if under an act — that of 1875 — which contains none of them, the local authorities could, at their pleasure, impose payment of such sum as they thought proper as a condition of giving consent. But if it be otherwise, if the common council can qualify their consent by such reasonable conditions as they think necessary for the protection of the interests and well being of the city — and we need not and do not decide that they cannot — and that such condition as the one I have considered is of that character, it is, nevertheless, a condition which could not be performed until after the road was constructed and in running order, and it is not required that the bond for its payment should be given before the company had acquired the right of way.

But, however, it may be with this condition, the others are neither reasonable nor lawful. They relate to matters over which the legislature and the commissioners have entire control. The statute determines how the damages of the landowner shall be ascertained, and confers upon the commissioners sole power and jurisdiction to determine when the various portions of the road shall be completed. Their action is as the action of the legislature and can neither be superseded, nor in any way affected by that of any other body. But here the resolution of the common council is wholly repugnant to the statute in one case, and to the condition imposed by the commissioners in the other. The statute requires the appointment by the Supreme Court of commissioners of appraisal, defines the mode of procedure, and gives effect to their decision, both as respects the company and the land owner. The common council requires the company to consent, at the option of

the land owner, to have his damages ascertained by the assessors for the city, and to abide by their decision as to damage or injury, including depreciation in value to any property abutting upon and along the line of the road.    These two schemes are inconsistent and cannot stand together.    The resolution of the common council, if effectual, nullifies the statute.    As to the other condition, the statute (§ 6), requires the commissioners, within ninety days after their organization as a board, to fix and determine the time within which " the railway or railways, or portions of the same, shall be constructed and ready for operation," and this was done, as we have seen, before the plan was submitted to the public as one to be carried out by such company as might be formed.    They prescribed for one portion the 1st of August, 1879, subject to an enlargement by reason of certain named contingencies hereinafter referred to.    The common council for the same portion fixed the arbitrary time of the 1st of June, 1879. For another portion the commissioners, subject to the same contingencies, fixed August 1, 1881; the common council named December 1, 1880, with no allowance in either case for the delays allowed for by the commissoners.    Again it may be observed of these conditions imposed by the local authorities, or accompanying their consent, as was said of the other and much more obvious terms, that they are in no sense conditions precedent, to be performed before the consent takes effect, and so become a component part of the scheme, but are conditions subsequent, the non-performance of which in the future shall, in the language of the resolution, " render the consent void."    The power to recall a consent is not given by the act of 1875, neither can it by the operation of any cause set on foot by the local authorities, when once given, be annulled.

It is claimed, however, by the respondent that the time fixed in the articles of association for the completion of that portion of the railway which includes Fulton street expired before the commencement of these proceedings, and that, therefore, the petitioners' corporate existence has been terminated.    This raises a very different question.    As the legis-

lature is the final judge as to what the public interest required to be done, so it could declare the consequences of a default. It could itself fix the time for completing the railway, or leave that matter to be determined by the commissioners. Both events were provided for in the articles of association, and it is necessarily conceded by the appellants that the date specifically named for the completion of the work had passed before these proceedings were commenced; it expired August 1, 1881; but their contention is that this period of limitation was extended by the proviso above set out, which suspends the running of time during the pendency of legal proceedings, or delays or inteference of the public authorities, "or otherwise."

The charter provision must have a reasonable construction, and it is plain that the time during which, and without fault on their part, the company had no legal ability to commence or carry on the work, should not be deemed to form any part of the allotted period. It appears by article 7 of the articles of association, that the resolution of the commissioners limiting the time for the completion of the work in question, was adopted on the 30th of June, 1878, and fixed the time as August 1, 1879, or thirteen months from the adoption of the resolution. But the work of the commissioners was not completed until the articles were filed, nor was there until that event any company with corporate existence to carry out their direction. It may properly be held, therefore, that the time intervening between the date of the resolution, June 30, 1879, and the incorporation of the company, should not be counted against them. For that delay the company were not chargeable, and the intention of the resolution in consideration of the object in view, and the language even of the statute (§ 6, *supra*), which gave authority to the commissioners in this respect, must be deemed to give a certain length of time after the company received its charter, in which that object should be accomplished. It had no power or being even, until January 6, 1879. Immediately after that date it made efforts to obtain consent of the property owners, and failing in that, applied to the Supreme Court under section 4 of the act of 1875 (*supra*),

for the appointment of commissioners, whose determination, if in favor of the construction of the railway, after confirmation by the Supreme Court, "should," the statute says, "be taken in lieu of the consent of the property owners." The report of the commissioners was made on the 26th of April, 1879.   It was favorable to the road, and on the same day an application was made for its confirmation. It was opposed, and remained undecided until February 10, 1880, when confirmation was refused.   In different courts the controversy between the company and its opposers continued until September, 1880, when it ended in a decision adverse to the company.   Since that time the affidavits show continuous efforts on the part of the company, among other things, to obtain the necessary consents of property owners, which was accomplished December 2, 1885.   It appears, therefore, that without fault on the part of the company, the intervening time was unavoidably consumed in part by legal proceedings, but also by the impossibility of obtaining the consent of the property owners, or its equivalent, and that time may, therefore, be added to the specified period named in the articles of association for the completion of so much of the road as is now in question. This effect should be given to the word "otherwise," as it stands in the article already quoted.   (Art. 7, § 6.)

Whether we look at the general scheme of the act which has regard to an undertaking promoted by the law making power of the State because of an ascertained public necessity for its completion, or at the rights of the parties who accepted the proposition of the commissioners appointed to carry out the scheme, as those rights are regulated by the statute, we are required to give effect to this general clause by which the scheme is regulated.   In doing so we must take into account the conditions upon which alone the work could proceed. *First*, the consent of the citizens, property owners, and, *second*, the consent of the local authorities.

Until the consent of each was obtained nothing could be done by way of construction, and the time necessarily and

in good faith employed in obtaining either may properly be deemed to have been unavoidably consumed. The commissioners anticipated that some time would be so consumed, and enumerated certain causes calculated to have that effect, as the pendency of legal proceedings, the delay or interference of the public authorities, but to those words they add "or otherwise," apparently having relation to the danger guarded against in the untimely expiration of the period limited. The word might indeed be applied to some act or interference on the part of the public authorities other than those mentioned, but it is not necessarily so limited, and as the manifest intention of the provisions of the sentence was to secure to the company the full time before specified for the completion of the work, it should be deemed to relate to both of these conditions and include any time "unavoidably consumed" in an effort to obtain either, and thus make it legally possible to commence the work which was to be completed at a given period, after the time began to run. This construction would not excuse a voluntary delay, nor an incapacity to proceed caused by the company itself, and would satisfy the rule which requires a court to be "guided by the intent of the legislature * * * taken according to the necessity of the matter and to that which is consonant to reason and good discretion" (*Stradling* v. *Morgan*, Plowden, 204), and which makes it necessary to construe a statute in accordance with the circumstances to which the act was intended to apply.

That the commissioners did not exceed their authority by providing for these contingencies, and that, notwithstanding the qualifications, the time within which the railways should be constructed was fixed and determined by them as required by statute, was in effect held by us in the *Matter of the Cable Co.*, decided December 15, 1886 (104 N. Y. 1), and requires no further discussion.

The appellants claim also that by various acts of the legislature the time for the construction of the railway has been extended (Chap. 350, Laws of 1879 ; chap. 405, Laws of 1882), but the views already expressed make it unnecessary to con-

sider the argument by which it is enforced. If correct, they answer also the position of the respondent, that the franchises of the corporation have been lost. That contention has no other basis than the assumption that the time given the company to construct its road expired before the present proceedings were commenced.

I have endeavored to show that upon the papers before us the fact is otherwise. But if mistaken in this, it would not follow that the appeal should for that reason fail. Section 7 of the act of 1875 (*supra*) provides that the commissioners shall, in the articles of association, " provide for the release and forfeiture to the supervisors of the county, of all rights and franchises acquired by such corporation, in case such railway or railways shall not be completed within the time and upon the condition therein provided."

This, as we have seen, was done in the very language of the act, and assuming with the respondent that the default existed, we are to inquire whether the property right or franchise, then in the company, was by that circumstance and without further act done by any one, or judgment of any court, transferred to the supervisors of Kings county, or at least diverted from the company. It is certainly well settled that a non-performance of the condition of an act of incorporation will forfeit the grant, even at common law, and like effect is given to such omission by the statute under which the petitioner came into existence, but I am not aware of any case holding that such default does of itself work a forfeiture, or that it can take effect except upon some proceeding where the question is brought directly before the court, unless the statute otherwise provides.

The principal cases relied upon by the respondent were within this exception. (*In re B. W. & N. R. R. Co.*, 72 N. Y. 245; id., 75 id. 335.) The company then before the court was organized under an act which declared that upon omission to do the thing in question, " its corporate existence and powers shall cease." And in the *Brooklyn Steam Transit Co.* v. *City of Brooklyn* (78 N. Y. 524), the charter then

before the court provided that upon such omission, "this act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated." In the last case the other two were reviewed, but the same principle was said to apply to each.

The general rule to which I have adverted was recognized, but the court held that the legislature had the power to provide that a corporation might lose its corporate existence without the intervention of the courts, and whether it had intended so to provide must depend upon the construction of the language used. In those cases the statute defined a single act and used unmistakable language. It was held that it executed itself. In the case before us, whether the omission has occurred depends upon a variety of circumstances, any one or all of which must be determined as matters of fact before a forfeiture could be found. It would be easy to say that the road was not completed at the end of thirteen months, or other fixed period, but whether in the meantime there had been delays from causes unavoidable, leading to loss of time, and to what extent, could be answered only upon an issue and after inquiry. Moreover, if there is a forfeiture, it is to the supervisors. The company remains a corporation, and the property right or franchise of building this particular portion of railway, or receiving whatever the company has lost, goes to the supervisors. They have not claimed it, nor does it appear that they require or will accept it. If there is a cause of forfeiture, then there is no reason apparent why they may not waive it. But this point need not be decided. The legislature has not annulled or dissolved the incorporation of the petitioner, as they might have done (§ 34, act of 1875), nor has judgment of forfeiture been rendered in any suit. We think nothing has yet passed from the company, and that they are entitled, so far as any question before us is concerned, to proceed with the work for which they were organized.

Such was our conclusion upon all the points presented upon the argument, or embodied in the brief then submitted, but afterwards the case of the *New York Cable Company*

was decided, and a new point suggested by it has been presented in behalf of the respondents as a conclusive answer to this appeal. It is argued that the organization of the company is not complete because the commissioners, having located fifteen different routes fixed the time within which five only of such routes should be completed, and omitted to determine any period within which the remaining ten should be finished. As a matter of fact the premises are truly stated. Is, then, the omission of a prescribed time as to the completion of some routes fatal to the whole scheme? This question did not arise in the *Cable case*. The articles of organization of that company provided for the completion of the routes named, but the time within which it should be done was to begin to run only when the necessary consents should be obtained, and as no time was limited for obtaining them it was contended by the opponents of the company that there was no actual limitation of the time within which the roads were to be constructed, but the court held that the commissioners substantially complied in this respect with the statute, and that the objection to the organization of the company in the respect insisted upon was not well taken. The effect of prescribing the time for the completion of some routes, and altogether omitting to do so as to others, was not discussed. If it be conceded that as to those latter routes the company had no power or right of construction, then we are to see whether the authority given in legal form as to certain routes is avoided because the same charter includes other routes not so authorized. The general rule is that when the illegal part of a contract cannot be separated from the legal, the whole is void, but when they can be separated, the bad part may be rejected and the good upheld.

This is the case here. The routes to which no time has been affixed may be conceded not to have been legally designated for any railway, and the streets or avenues included in them to be open to occupation by another company. (§ 4, act of 1875, *supra*.) As to those, then the appellant cannot be said to have acquired any right or franchise, and the terms and

intent of section 7, which requires the articles to provide for the release and forfeiture to the supervisors of the county, in case the railway or railways shall not be completed within the time therein provided, can be fully satisfied. The letter and intent of the act has been complied with, and upon default of the company, all its rights and franchises are to be released and forfeited to the supervisors. In the *Cable case* it was held that under a necessary construction of the charter, that company was required to suffer no penalty except the forfeitures of " the franchise of constructing the routes which they elected to abandon," and it was, therefore, not in compliance with the statute. In that case, moreover, the company was left at liberty to choose which of the twenty-nine routes covered by the articles it would complete, and for an indefinite number of years hold the privilege granted by franchise, to the exclusion of other organizations, neither building necessary roads themselves, nor permitting others to construct them. Such an option was to the public prejudice.

A different conclusion is required by the terms of the articles before us. The company is not at liberty to select its routes, and the omission in the articles of a fixed time for the completion of the railway over certain routes is not chargeable to the corporation, but to the commissioners, who as to these routes may be said to have failed to act. The effort to designate those routes was futile, and the evil pointed out in the *Cable case* could not arise in this.

In conclusion, we are of opinion that the petitioner upon filing the certificate and articles as required by statute (Laws of 1875, chap. 606, § 9), became, and that it now is a corporation. So far, therefore, as any question has been raised by the respondents, the appeal should prevail. To that end the orders of the Special and General Terms should be reversed and the case remitted to the Supreme Court for the appoint-ment of commissioners.

All concur, except EARL and FINCH, JJ., who dissent.

Ordered accordingly.