[No. 15196.  Department One.  April 4, 1919.]

The City of Spokane, *Respondent,* v. Fred V. Fisher, *Appellant,* Elizabeth Graf, *Defendant.*[1]

MUNICIPAL CORPORATIONS (445, 446)—DEFECTS IN STREETS—LIABILITY OF ABUTTERS.  The owner of a building leased to various tenants, who maintains a trap-door in the sidewalk which was the only means of access to a heating plant by which the entire building was heated to the advantage of the owner (although the plant was operated by one of the tenants), owes the duty of maintaining the same in a reasonably safe condition; and is therefore liable over to the city, held for injuries to a pedestrian, although caused by the negligence of an employee of the tenant in opening the trap-door without warning.

JUDGMENT (208, 209)—PERSONS CONCLUDED—ULTIMATELY LIABLE—APPEAL—NECESSITY.  A judgment recovered against the city for personal injuries, sustained by a pedestrian, upon which the abutting owner was liable over to the city, is final unless appealed from, and it is no defense to the abutter's liability that the city took no appeal to the supreme court.

COSTS (45)—AMOUNT AND ITEMS—WITNESS FEES—EXPERTS.  In the absence of statute, extra compensation cannot be taxed as costs for expert witnesses where there was no showing that such evidence could not be procured by subpoena without paying extra compensation.

DAMAGES (30)—COSTS OF LITIGATION.  A city cannot recover over from an abutter, liable for the judgment, for extra compensation paid to expert witnesses which could not be properly taxed as costs.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered September 25, 1918, upon findings in favor of the plaintiff, in an action in tort, tried to the court.  Modified.

*Samuel R. Stern,* for appellant.

*J. M. Geraghty* and *Alex M. Winston,* for respondent.

[1]Reported in 180 Pac. 139.

TOLMAN, J.—The city of Spokane was made defendant in a suit for personal injuries, brought by one Nicolini, who alleged that he fell and sustained the injuries complained of by reason of the raising of a trap-door in the sidewalk on First avenue in that city, at the instant he was about to step upon it. Following the service of summons and complaint upon it in that case, the city gave notice to appellant, who was then the owner of the premises abutting upon the sidewalk where the accident occurred, calling upon him to assume the burden of defending that action; and advising him that, as he was responsible for the installation and maintenance of the trap-door, the city would hold him for any recovery against it in that case, together with the costs and expenses it might incur in defending. Appellant did not appear in that action; and while his attorney rendered some assistance to the city, it was stipulated that appellant should waive no rights thereby. Nicolini recovered a judgment against the city, which, being small, the city paid without appealing from the judgment, and then brought this action to recover from appellant the amount so paid, together with the amounts expended by it in defending the Nicolini case. The trial court made findings and conclusions in accordance with respondent's theory of the case, and entered judgment against appellant for $473.08, which included $357.70 paid in satisfaction of the judgment and costs in favor of Nicolini, and $79.60 expended by the city in defending that action; from which judgment, this appeal is taken.

Appellant, by his assignments of error, raises three questions: First, that the trap-door was under the sole charge of his tenant (also joined as a defendant in this action) and was used solely for her purpose,

and therefore he, as the landlord, cannot be held liable for the overt act of the tenant of which he had no knowledge and in which he nowise participated; and in any event the judgment should be collected from the tenant; second, that the Nicolini judgment was not appealed to the court of last resort; and third, that there was improperly included in the judgment amounts paid by the city as fees to expert witnesses which are not recoverable.

It is admitted, or appears without substantial dispute, that appellant was the owner of the premises abutting upon the sidewalk where the accident occurred, which consisted of a three-story and basement building. The two upper stories were leased to the defendant Elizabeth Graf, who conducted a lodging house business therein. The first or street floor was divided into two storerooms, one of which was occupied by the Oriental Tea Company, the other being vacant at the time of the accident. In the basement was located the only heating plant in the building, which was used primarily to heat the lodging house, and was in sole charge of the defendant Graf, operated at her expense by a janitor employed and paid by her. The pipes which conveyed the heat to the upper floors passed through and extended across both storerooms on the main floor; and as to the one then occupied, the evidence clearly shows that these pipes furnished ample heat at all times for the purposes of the tenant, and although there was a small radiator in the rear of that storeroom, it was never turned on or used. The tenant testified that his contract with the landlord was silent as to the furnishing of heat, and that he paid nothing directly for the heat which he obtained by the means above set forth. The court found upon this subject as follows:

"That at the said time, to wit, the 17th day of September, 1916, and for a long time prior thereto, the purpose for which the said trap-doors and cellarways were used was to connect with a furnace in the basement of said building, and that the objects and purposes of said furnace were to heat the entire building aforesaid—both that part occupied by the defendant Graf, and that part occupied by the defendant Fisher, either in person by reason of its being vacant, or through his other tenants. That, when the defendant Graf heated the upper stories of said building, of necessity she also heated the lower story, in that the pipes conveying the heat from the furnace to the upper stories passed through both storerooms on the ground floor of said building, and were extended across said storerooms longitudinally, and that, in the east storeroom thereof, there was a radiator so connected as to furnish heat, and so installed with the said pipes as to furnish heat therefor. That the present tenant of the east storeroom, who has occupied the same for some years, does not use the said radiator because, from the nature of its business, which is a seed business, it has no occasion for more heat than is furnished by the said pipes, and that the only manner in which under the conditions which existed, the said heat could be furnished, and was furnished, for all the floors in said building, was by the bringing in of coal through said trap-door in front of No. 921, First avenue, and the going into and opening of said trap-doors to place coal in the said cellarway and to put coal from the said cellarway into the furnace of said building, there being no entrance of said cellarway except by means of said trap-doors as aforesaid; and that, as a matter of fact, the heat of said furnace has furnished, and does furnish, sufficient heat for the tenant or tenants of the lower stories of said building, and there has not been, nor is there, any other method provided for heating the same, and that without heat the same would not be tenantable."

It must be borne in mind that the negligence of which Nicolini complained was the raising of the trap-

door referred to by the janitor in the employ of the tenant of the upper floors, without sufficient warning, at the instant that he was about to step thereon. Authorities are numerous to the effect that, had the injury occurred by reason of some defect in the trap-door itself, or the manner in which it was installed, the installation being primarily for the benefit of the landlord, he would, unless he had parted with the entire possession, be liable over to the city. *Trustees of Village of Canandaigua v. Foster,* 156 N. Y. 354, 50 N. E. 971, 66 Am. St. 575, 41 L. R. A. 554; *Wabasha v. Southworth,* 54 Minn. 79, 55 N. W. 818; *New York v. Corn,* 133 App. Div. 1, 117 N. Y. Supp. 514. But here we are concerned, not with any defect inherent in the trap-door, but with its negligent operation by a tenant; and the question is, may the landlord, by anything less than a term lease, which wholly divests him of any and all control over the premises, escape liability for such negligent operation?

In *Spokane v. Crane Co.,* 98 Wash. 49, 167 Pac. 63, we held that the tenant who was in possession under a twenty-year lease, which required him to erect and maintain the building, was liable, and that the landlord, who was not in possession and had not been for twenty years, who did not erect, was not using, and had never used the building, and had not covenanted to keep either the building or the sidewalk in repair, was not liable. If these elements were necessary to exonerate the landlord in that case, the lack of them here would seem to call for an opposite result. Here it conclusively appears that the landlord was in constructive possession of the vacant portion; presumably he constructed the building and the trap-door prior to any leasing; the trap-door permitting access to the heating plant no doubt increased the rental value of

the building and its several parts; the heating plant, fed and maintained through the trap-door, incidentally heated the storerooms, and added to their desirability, even if it did not actually add to their rental value—the denial of this fact is not convincing—and the failure of the appellant to produce the leases, which were in his possession and under his control, does not incline us to find that he had no rights of supervision, duty to keep in repair, control over the operation, or financial benefit from the heating plant and the trap-door which was necessary to its maintenance and operation. Under circumstances such as exist here, it has been generally held that a landlord who secures the privilege from a city to install such an instrumentality in the sidewalk for his own profit and benefit, is liable over, not only for defective installation and maintenance, but also for negligent operation.

In *Hayes v. Seattle*, 43 Wash. 500, 86 Pac. 852, 117 Am. St. 1062, 7 L. R. A. (N. S.) 424, speaking of such an opening in a sidewalk, it was said:

"This opening was upon a prominent thoroughfare, in constant use by pedestrians. The opening was not guarded in any way, and to open it at all was a menace to every person who happened at that time to be passing."

From this the conclusion was drawn in that case that the city was liable, and if the city was liable because it gave the property owner permission to install the trap-door, why should not the owner be liable over because of the tenant's negligence? In other words, if the city is liable because of the owner's negligence, why is not the owner liable because of his tenant's negligence?

In *Seattle v. Puget Sound Imp. Co.,* 47 Wash. 22, 91 Pac. 255, 125 Am. St. 884, 12 L. R. A. (N. S.) 949, it was said:

"Appellant also contends that the court erred in finding that the appellant maintained the trap-doors and areaway beneath the sidewalk, and that appellant had control thereof. It is admitted that the appellant owned the building, and that the areaway and trap-doors were placed in the sidewalk exclusively for the benefit of the building. Under these circumstances it became the duty of the appellant to maintain the trap-doors reasonably safe for passersby. The evidence conclusively shows that the building was at all times under the control of the appellant. It is true the appellant leased offices and storerooms therein to different tenants, but the control of the building and its maintenance and the actual possession of a part of the building were in the appellant personally at all times. Under these circumstances appellant would be liable."

And in *Spokane v. Crane Co., supra,* it was said:

"The right of recovery is not referable to mere passive negligence in failing to repair, but to active negligence in creating, or at least maintaining, a dangerous condition for his own personal convenience. In such a case, though the city, when chargeable with notice of the condition, is primarily liable to the person injured, this is only because of its duty to the public to keep the streets reasonably safe resulting from its control over the streets. But the person who actually created or maintained for his own use the dangerous condition is, as between the city and himself, still primarily liable on elementary principles, and regardless of any statute or charter provision so declaring, . . ."

Cases from other jurisdictions go more directly to the point, and place the duty of maintaining such an instrumentality in such a way as to avoid injury to the public directly upon the landlord, even though the

active negligence is that of a tenant or an independent contractor. *French v. Boston Coal Co.,* 195 Mass. 334, 81 N. E. 265, 122 Am. St. 257, 11 L. R. A. (N. S.) 993; *Jennings v. Van Schaick,* 108 N. Y. 530, 15 N. E. 424, 2 Am. St. 459; *Grand Forks v. Paulsness,* 19 N. D. 293, 123 N. W. 878, 40 L. R. A. (N. S.) 1158; *Downey v. Low,* 22 App. Div. 460, 48 N. Y. Supp. 207; *Hart v. McKenna,* 106 App. Div. 219, 94 N. Y. Supp. 216; *Anderson. v. Caulfield,* 60 App. Div. 560, 69 N. Y. Supp. 1027.

We conclude then that, as the finding quoted is amply sustained by the admissions in the answer, the evidence, and the reasonable inferences to be drawn therefrom, the holding of the trial court was right upon this, the main question in the case; and whatever right the landlord might have as against the tenant, or an independent contractor, such right, if any, cannot be urged as a defense in an action brought by the city against him.

Upon the second point raised, it need only be said that the judgment of the superior court was a valid one, and final unless appealed from. The city had given notice to appellant to defend, of which privilege he had not availed himself. We know of no rule of law which requires the city to appeal; and certainly appellant cannot be heard to complain after having declined to assume the burden of defense which the city had tendered.

The third point raises the question as to whether fees in excess of the statutory witness fees, paid to expert witnesses, may be recovered. There being no law which places an expert witness on any different footing as to fees than that of any other witness, and no showing that such evidence could not be procured by subpoena without the paying of extra compensa-

tion, there is no authority to tax such fees as costs, and if paid unnecessarily or voluntarily, they should not be recovered. Under the authority of *Nelson v. Industrial Insurance Department,* 104 Wash. 204, 176 Pac. 15, the judgment must be modified by reducing it in the sum of sixty dollars, being the amount so paid.

Except as modified, the judgment is affirmed, but neither party will recover costs in this court.

MAIN and MITCHELL, JJ., concur.

CHADWICK, C. J., concurs in the result.

MACKINTOSH, J., dissents.