[No. 19191.　Department Two.　October 19, 1925.]

Rose M. Tubb *et al., Respondents,* v. The City of Seattle, *Appellant.*[1]

Municipal Corporations (431)—Streets—Negligence—Open Trap Doors—Question for Jury. The negligence of a city, on account of an open sidewalk elevator hatchway, is a question for the jury in a pedestrian's action for injuries sustained in falling into such hatchway, where the opening was at one of the busiest corners of a large city, and there was no "sidewalk elevator man" in attendance, with the sole duty to warn persons, when the hatchway is open during certain hours of the day, as required by a city ordinance.

Same (464)—Negligence (38)—Cause of Accident—Evidence—Sufficiency. In an action for injuries sustained by a pedestrian through a fall into a sidewalk elevator hatchway, in which the plaintiff was unable to say how she fell after turning from a shop window, the cause of the accident is sufficiently shown by the testimony of another who identified plaintiff as the same person who, a moment before, was looking in the window, and suddenly disappeared, whereupon someone called she had fallen in, and witness looked down the open hatchway and saw her down there.

Same (440, 451)—Contributory Negligence—Evidence—Presumptions as to Ordinary Care. The contributory negligence of one who fell into a sidewalk elevator opening will not be presumed from the mere fact of an injury.

Trial (52)—Misconduct of Counsel—Correction of Objectionable Matter. Misconduct of an attorney in argument to the jury is cured where the court promptly instructed the jury to disregard it.

Mackintosh, J., dissents.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 29, 1924, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for personal injuries sustained through an unguarded opening in a sidewalk. Affirmed.

*Thomas J. L. Kennedy* and *Ray Dumett,* for appellant.

*Crowder & Crowder,* for respondents.

[1] Reported in 239 Pac. 1009.

MAIN, J.—The plaintiffs are husband and wife and brought this action to recover for injuries to Mrs. Tubb, who will be referred to as though she were the only plaintiff. The action is predicated upon the claimed negligence of the defendant, the city of Seattle. As the action was originally brought there were other parties defendant, but these were dismissed from the case before it came on for trial. The action was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $7,350. Motions for judgment notwithstanding the verdict and for a new trial were interposed, both of which were overruled. Judgment was entered upon the verdict, from which the city appeals.

The facts may be stated as follows: On the 12th day of March, 1923, between the hours of one and two o'clock in the afternoon, the respondent, while walking north upon the concrete sidewalk on the west side of Second avenue, in the city of Seattle, stopped to look into the window of the Boston Shoe Store, which is situated just south of the entrance to the Eitel Building on the northwest corner of Second avenue and Pike street. This is one of the busy corners of the retail district in the city. In the sidewalk near where the respondent was standing was a hatchway which was covered by two iron doors which opened upward from the center, leaving an aperture in the sidewalk approximately four feet square. In this hatchway was what was called a sidewalk elevator. At the time of the accident the hatchway was open. The doors thereto were about two feet two and one-half inches high and were standing upright. They were connected at either end by horizontal iron bars which were about two feet above the sidewalk. As the respondent

started to leave the shop window she fell into this hatchway and was severely injured.

An ordinance of the appellant city provided, among other things, that where the doors above a sidewalk elevator were open, that "a sidewalk elevator man shall be stationed on the sidewalk at the elevator opening to warn persons of the danger, and if such elevator shall be operated between 9:00 A. M. and 9:00 o'clock P. M., his sole and only duty shall be to so warn persons." At the time of the accident, there was no sidewalk elevator man at the hatchway to warn persons as required by the ordinance.

The court in submitting the matter to the jury gave an instruction which was to the effect that actual or constructive notice to the city was not necessary in order to establish liability. It is argued that this instruction did not embody a correct statement of the law. In other words, the contention is that the city is not liable in the absence of actual or constructive notice. In *Hayes v. Seattle*, 43 Wash. 500, 86 Pac. 852, 117 Am. St. 1062, 7 L. R. A. (N. S.) 424, it was held that the city was liable to a pedestrian for injuries sustained by a fall into an unguarded opening into the sidewalk caused by the opening of one of a pair of trap doors which when both were open formed a barrier, although the door had been opened but a few moments, where it appeared that the place was a common thoroughfare in constant use and any opening was a constant menace to every person passing. It was there said:

"The city contends that it is not negligence in itself to permit an opening to be made in a sidewalk and used for the purposes for which this opening was used, and that, because it is not such negligence, it is not liable for any negligent use made of the opening unless

it has knowledge, in time to correct it, of the fact that it is being negligently used; further contending that in this case there is no evidence that it had such knowledge. But we think these contentions inapplicable to the facts as shown in the record. This opening was upon a prominent thoroughfare, in constant use by pedestrians. The opening was not guarded in any way, and to open it at all was a menace to every person who happened at that time to be passing. These facts the city knew or ought to have known, and we think the court rightly held it responsible for the injury."

That case is referred to in the cases of *Connolly v. Spokane,* 70 Wash. 160, 126 Pac. 407, and *Spokane v. Fisher,* 106 Wash. 378, 180 Pac. 139, and the rule thereof expressly approved.

In the present case, under the doctrine of the cases mentioned, whether the appellant was negligent on account of the hatchway being open without a man present to warn persons of the danger thereof was a question for the jury.

The case of *Whitty v. City of Oshkosh,* 106 Wis. 87, 81 N. W. 992, cited by the appellant, supports a different rule of liability from that which has been adopted by this court and therefore cannot be followed.

The next contention is that there is no evidence as to the manner in which the accident happened, and that therefore the case should have been taken from the jury. The respondent testified that she stopped to look at the shop window for a few minutes and then turned to go on up Second avenue to her destination, and that she does not remember what happened after that, except "all I felt was as though my head was split." She did not know that the hatchway was there or that the doors thereto were open. Another witness, who was looking at the same shop window at the time respondent was, testified:

"You were there at that time, and tell the court and jury if there was some lady standing there at the same time? What were you doing? A. I got a date to the doctor in the same building and I was standing at the window. Q. What window was that? A. In the shoe store window. Q. And was there anybody else standing near you? A. I could not—there was lots standing by—one lady standing by me, and I just noticed her on account of her clothes. Q. Did you turn around? A. I looked in the window. Q. Now, what attracted your attention away from the window? A. Some man hollered the woman fell in. . . . Q. Was the woman still standing there? A. No, she just disappeared; it just took a second. Q. What happened then? A. I looked in the hole and I seen a woman there; it was the same woman that was standing there; she had a white uniform apron and a brown coat."

Other evidence identifies the respondent as the lady that this witness referred to.

In *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804, it was held that the jury was warranted in finding that the death of a brakeman, riding on the steps at the side of the pilot and thrown beneath the pilot, was caused by the negligence of the railway company, where it appears that he was riding where required in the switching work in which he was engaged, that the roadbed had soft spots in it, which allowed the engine to tilt until the pilot would rub on the rails, and it was found that there was a low or soft spot in the roadbed where the accident occurred, and that the top of the switch had been freshly chipped or cut and the pilot bore marks of having been in contact with the rail, and was found to be loose at certain points so that it could be swayed from side to side several inches by pressure; all the circumstances indicating that he was thrown in front of the pilot by a jar caused from contact between the pilot and track. It was there said:

"While it is a sound rule that to sustain a finding that the appellant's negligence was the proximate cause of the injury, the evidence must present something more than a mere possibility or conjecture, it is equally sound that the cause of an accident may be inferred from circumstances. A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable. 'There are very few things in human affairs, and especially in litigation involving damages, that can be established to such absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.' In other words, the plaintiff is only required to satisfy the jury, by a fair preponderance of the evidence, that the accident causing the death occurred in the manner he contends it did. We think the evidence here justified such a finding, and that there is no cause for sustaining a challenge to the sufficiency of the evidence."

In *Frescoln v. Puget Sound Traction, L. & P. Co.,* 90 Wash. 59, 155 Pac. 395, it was held that the cause of the death of a passenger alighting from a pay-as-you-enter street car was not left to speculation or conjecture, where the deceased was seen on the rear platform of the car when the car was being brought to a

stop, and was next seen lying in the street about fifteen feet in the rear of the car, and the conductor was seen to reach up and ring the bell and go back and pick him up. It was there said:

"The husband of the appellant was a passenger upon one of the street cars operated by the respondent. The car was a pay-as-you-enter car, having gates which were opened and closed by the employees of the company, and through which passengers could not pass unless they were so opened. The deceased was seen on the rear platform of the car by two witnesses who were driving behind the car in an automobile. The lights of the automobile were lit so as to give a plain view of the street in front of the automobile and of the rear platform of the car. The car stopped and, in obedience to an ordinance of the city, the automobile was stopped while passengers alighted. When the deceased was next observed by the witnesses he was lying in the street about fifteen feet in the rear of the street car. The conductor was seen to reach up and ring the bell. One of the witnesses and the conductor went to the deceased and picked him up. He had suffered injuries from which he subsequently died."

It was then concluded that the question of the defendant's negligence was for the jury.

The facts in the present case bring it within the holding of those two cases. The case of *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038, is not in point because there there were a number of theories advanced which would have been as reasonable as that contended for by the plaintiff which might have caused the accident.

It is next contended that the respondent was guilty of contributory negligence as a matter of law, but there is nothing in the record which would justify such a holding. The presumption is that the party injured was in the exercise of ordinary care, and this presumption is not overthrown by the mere fact of injury. In

*Buesching v. St. Louis Gaslight Co.,* 73 Mo. 219, it was said:

"Now, the law presumes that the deceased was in the exercise of ordinary care; and this presumption is not overthrown by the mere fact of injury. Shearman & Redfield on Neg., § 44; *Hoyt v. The City of Hudson,* 41 Wis. 105, 111; s. c., 22 Am. Rep. 714; *Gay v. Winter,* 34 Cal. 153. This presumption of due care always obtains in favor of a plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another."

Finally, it is contended that the judgment should be reversed because of misconduct of respondents' counsel in argument to the jury. But we find no merit in this contention. When the remarks complained of were objected to, the court promptly instructed the jury to disregard them. What was said was not of such a character that it could not be cured by the instruction.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, and FULLERTON, JJ., concur.

MACKINTOSH, J. (dissenting)—The evidence in this case, to my mind, presents nothing upon which to predicate negligence of the appellant and I must dissent.