## Bush *versus* Johnston.

1. Where the public, for above thirty years, had been permitted to occupy as a sidewalk a portion of ground in a village, in front of a private building, and the owner extended into the sidewalk or near to it a hatchway leading to his cellar, and interrupted the passage, permitting the interruption to remain for several days without enclosure or other protection against accident, it was *Held,* that he was liable to a person who was injured by falling into the same in the night time, no want of ordinary care on the part of the person injured appearing.

2. The burden of proof of want of ordinary care on the part of the person injured lay upon the party alleging it, .viz., the defendant.

3. The Court had a right to express an opinion as to the character of the injury sustained.

ERROR to the Common Pleas of *Tioga county.*

This was an action on the case to December Term, 1850, by Jacob Johnston *v.* Alva C. Bush and Jabin S. Bush, to recover damages for an injury sustained by the plaintiff from falling into a hatchway near the sidewalk and near to the store of the defendants in the village of Tioga. The writ.was not served on J. S. Bush. The plea was not guilty; also that if any injury arose to the plaintiff in the premises, the defendant would be only jointly liable with J. S. Bush who was not served with the process.

A. C. Bush, the defendant, was the owner of a lot in Tioga village, on which he had a store-house erected, which was occupied by him. For the purpose of repairing the hatchway leading to the cellar, the walls were taken up, and before they were completed, the plaintiff, when passing in the evening of the 18th October, 1848, fell in and had his shoulder injured. It was alleged on the part of the *defendant* below, that the work was done with reasonable despatch, and that the plaintiff knew that the work was progressing—and had seen it. On the part of the plaintiff it was alleged that the pit was open from two to four weeks, and that the night was dark and rainy when the accident happened; and to avoid the rubbish thrown out it would have been necessary to go into the street.

The defendant purchased the lot on which the store-house was erected in 1832, and erected the store-house in 1834. It is situate on the east side of Main street or Williamson road. It was alleged on part of the defendant that the house was set back from the line of the road 10 or 12 feet, leaving the hatchway, platform, and sidewalk within the boundaries of his lot.

The charge was, *inter alia,* as follows :—

" It is not disputed by the defendants' counsel that plaintiff had his shoulder dislocated by falling into the area or hatchway opposite defendant's store, or that the area or hatchway was put there by the act of the defendant. But they allege

" 1st. That he had the right to put it there, and this they base upon his ownership of the land on which it was dug, assuming that he had the exclusive right to occupy it for any purpose whatever, and that the public had no right of way over it.

" 2d. That in digging the hatchway or passage to his cellar, he used all necessary and proper precaution to guard the public against accident or injury from it, and was not guilty of that kind of negligence which would render him liable for resulting damages.

" 3d. That the plaintiff had been guilty of negligence himself, and had not used ordinary care and caution in passing the hatchway, and that his misfortune was the result of his own carelessness or recklessness.

" 1st. The building in front of which the hatchway was dug in which the plaintiff received the injury, is located on the east side of Main street, in the heart of the village of Tioga. The sidewalk in front of the building is perhaps as much used as any other portion of the sidewalks in that village. This street is called Main street, or Williamson road, in the deed from James Goodrich to defendant, conveying the lot on which defendant's store is erected, and the lot is described in it as bounded by this street on the west. The passage-way is immediately in front of the building at its north-west end, and at the time plaintiff fell into it, the wall which originally enclosed it had been taken out and the area enlarged. The right of the defendant to build or enlarge it is not denied; but it is urged by his counsel, that he had the right irrespective of any rights of the public, and that under the facts disclosed in regard to the title it was not necessary that he should guard the public against injury by enclosing, fencing, or otherwise. This position we conceive is not tenable, and we instruct you that it is not law.

" *The plaintiff has established the right of the public to use this street by prescription, having showed by William Garretson, that it was occupied as a public street or highway according to its present boundaries in 1827;* and by Ira McAllister that it was thus occupied when he came into the country in 1816, and that the red store known as the Evans store, was built in 1826 and located in what was then supposed to be the east boundary of the street. The evidence of McAllister and others also shows that defendant's store ranges in a line or nearly so with the Evans store. The deed from James Goodrich to the defendant, conveying the land on which his store stands, is dated the 2d of March, 1832. On the 27th of November, 1788, the Act of Assembly was passed authorizing the laying out and opening of the Williamson road; and on the 10th of April, 1792, and 11th of April, 1794, other Acts were passed confirming it. *When* it was first opened and travelled as a highway, does not appear in evidence. Nor is there any evidence in the cause showing by what authority the road or street was opened to

[Bush v. Johnston.]

its present boundaries, it having been opened of a greater width in the village of Tioga than was contemplated by the original Act authorizing it.

" It results therefore from the evidence, that, at the time defendant bought and took possession of his lot and erected his store, the public had not a right, by prescription or by legislative enactment, to occupy that portion of the street in front of his store which he occupied with his hatchway and platform and steps, unless it constituted a portion of the Williamson road, as originally surveyed, and of this there is no proof. On the contrary, the evidence would lead to the inference that it was not a portion of the original Williamson road, and that the road occupied the west part of the street commencing at James Goodrich's house, which was its western boundary, and extending towards defendant's store. It is contended, therefore, that the right of the public to use the land as a sidewalk, within the posts placed in front of his store, was merely permissive—that defendant consequently had the right at any time to resume its occupancy, and that in point of fact he had done so by locating his posts as he did, and by occupying a portion of the ground by the hatchway to his cellar, and by the steps and platform in front of the entrance to his store-room. In reply to this position, we say that it is questionable in the first place whether the defendant by his deed acquired any portion of this land, as he is bounded on the west by Main street or Williamson road, his starting point being the north-west corner of the lot on which the Evans store was erected, there being no other designated or fixed boundary of the street or road, and defendant having placed his store in range with the Evans building.

"*But whether his deed included this land or not, we deem wholly immaterial. It was never enclosed by the defendant, and the public were always permitted to occupy and use the sidewalk inside of the hitching posts put up by him, from the time he took possession of the lot and built on it, down to the commencement of this suit*—he occupying no portion of the ground between his store and hitching posts, except what was embraced by his hatchway and steps and platform. It is therefore submitted to you, that the public had a right by prescription (even conceding that the ownership was in defendant at the time he purchased) to occupy and use as a way or sidewalk, the ground which they have used and occupied since 1827 between the hitching posts and the original hatchway and steps to the platform in front of defendant's store ; and if you believe from the evidence that he enlarged the hatchways, extending them into the side walk, or in close proximity to it—that he threw out a pile of earth in front of the hatchway and on the sidewalk adjacent to it, thereby interrupting the passage of the public ; and that he permitted the hatchway and the earth thrown out to remain in this condition

several days without an enclosure around them or guard of some kind sufficient to protect persons passing by from falling into the hatchway, the law would hold him liable for any injury which might be sustained in consequence thereof—unless the injury resulted from the want of ordinary care on the part of the person sustaining it.   *We hold the law to be the same, even were the right of the public to use the sidewalk permissive and not a prescriptive right.*

" *The owners of lots in a village, whether incorporated or not, who see fit to throw out a portion of their land for the purpose of widening a street, or making a sidewalk, have no right, so far as regards the principles which govern the law of nuisance, superior to those whose lots are bounded directly upon a regularly laid out public street, or upon a street which has become a public highway by prescription.   Even if they could legally resume possession of the land thus added to the street, it would, until possession was resumed by actual enclosure, be such a dedication to the public use as would render the owner liable in an action on the case to any person who might be injured by the creation of a nuisance by him in front of his building or enclosure.*

" *The plaintiff, therefore, having established Main street or Williamson road through the village of Tioga as a public highway by the introduction of evidence showing that it was used as a road during a period of 30 years or upwards, up to the time plaintiff received the injury complained of, the question of title raised by defendant is wholly irrelevant, and will not be permitted to avail him as a defence.*

" 2d. Did the defendant use all necessary and proper precaution to guard the public against injury from the hatchway which he caused to be dug in front of his store ?

" It is not alleged that there was any enclosure of the area in which plaintiff was injured from the time the wall was taken out, and it was enlarged, until the new wall was finished, and the dirt thrown out removed.   The evidence shows there was a dry goods box placed on the sidewalk, at the southern extremity of the hatchway.   On this one end of a plank, some 12 or 14 feet in length, was laid with its other end resting on the door-sill of the store door.   It was also shown that persons coming down street, in the direction travelled by plaintiff when he was injured, would necessarily run against the plank or box, if they pursued a straight line along the sidewalk, and that they could not fall into the hatchway without getting over the plank, or going around its west end, and then diverging considerably from a straight line to the right, the plank extending some six feet or more beyond the hatchway.   But this plank and box were not stationary or fixed. The plank was frequently down while the men were at work in the hatchway and cellar; and Ira Baker, who aided in taking

[*Bush v. Johnston.*]

Johnston out of the hatchway, on the night the injury was received, swears there was no plank there then. In front of the hatchway, and at its north end, there was no plank or protection whatever; and where the plank was down at the south end, there was nothing to prevent a person from walking in at either end, or in front, except the pile of dirt which was partly on the sidewalk, in front of the hatchway; and this, instead of affording protection, might in consequence of the footpath over it, near the edge of the hatchway, tend, as some of the witnesses testify, to lead a person into it.

" *We charge you that it was the duty of defendant to have protected the public against this hatchway, by a substantial enclosure of some kind, or by keeping a light burning near it after night, in a position to have shown it distinctly enough to have enabled persons using ordinary caution, to avoid it; and that if he did not do so (the evidence does not show that he did), whether it is properly designated as gross carelessness or ordinary carelessness, it is such carelessness and disregard of the rights of the public as will render him liable to pay damages for all injuries sustained by reason of it.* It is hardly necessary to add that the hatchway, at the time the· plaintiff fell into it, was from its position and situation a public nuisance, if it was not ·guarded as before stated; and whether it was or was not thus guarded, you will determine, taking into consideration all the evidence which has a bearing on this part of the case.

" 3d. Did the plaintiff use ordinary care and caution in passing the hatchway, or was his misfortune the result of his own carelessness? If the injury sustained by plaintiff was the consequence of his own want of ordinary care, he is not entitled to a verdict, no matter how culpable may have been the conduct of the defendant. When mutual negligence is shown, the injured party cannot recover damages, the law regarding his misfortune as the result of his own want of caution, and not of the carelessness or default of the other party.

" But the burthen of proof of want of ordinary care, rests upon the party alleging it, and in this case, upon the defendant. Has he shown satisfactorily that plaintiff did not use ordinary caution, or can you infer that he did not from the facts given in evidence for the purpose of establishing that inference? These facts are that Johnston was there when Shaft was at work digging out the hatchway; that he lived up Wellsboro' street, and was frequently at Baldwin's store, nearly opposite; that he occasionally was seen going into Baker's grocery store after the hatchway was opened, passing so near it that he · could scarcely have avoided seeing it; that there was a light kept burning usually in front of Baker's grocery, and that there were other lights in the neighborhood; that the accident occurred about 8 o'clock in the evening,

[Bush *v.* Johnston.]

and that the lamps, according to Steele's evidence, were burning in his store that night after that hour, and that they lighted up the street in the vicinity of this hatchway. You will judge whether from these facts and others, which have been introduced in evidence, the inference fairly arises that the injury received by plaintiff resulted from his own want of care and caution. This is purely a question of fact for your determination, upon which we intimate no opinion, and deduce no inferences for your guidance. It is your province to decide it, and we submit it entirely to you with the simple instruction, that if you believe the plaintiff was guilty of negligence, or did not use ordinary caution, and by reason thereof fell into the hatchway and sustained the injury complained of, he is not entitled to your verdict.

" Upon the question of damages : should you find for the plaintiff, you will give him what you believe he is justly entitled to from the evidence.  *The injury is one of no ordinary character, and the plaintiff, if entitled to recover, is entitled to a fair and full compensation for it, so far as it can be made in money by your verdict.*"

December 18, 1852, verdict for plaintiff for $1000.

Error was assigned to the parts of the charge included between asterisks ; and 9thly, in not answering certain points proposed on part of the defendant.

*Guernsey* and *Maynard*, for plaintiff in error.—It was alleged that the hatchway was not in the public highway or sidewalk, but within the enclosure of the defendant occupied by him exclusively for his private purposes ; and that the Court withdrew such fact from the consideration of the jury by assuming that the hatchway was located *in the street.* That there was error in this was cited 1 *W. & Ser.* 68 ; 6 *Id.* 137 ; 11 *Ser. & R.* 427. It was error not to instruct the jury on points proposed : 5 *Ser. & R.* 427.

It was said that the plaintiff below knew of the location of the hatchway : cited 6 *Barr* 472.

*Sherwood* and *Williston*, for defendant in error.—It was said that Bush's property was bounded on the west by the Williamson road. The plaintiff below passed by on the first day when the hole was being dug, but there was no evidence of his being there afterwards till the accident happened. The repairs were not made with expedition. No argument on legal questions was submitted on the paperbook, but the following authorities were simply cited, viz. : 2 *Greenleaf's Ev.* 623 ; 4 *Barr* 305 ; 1 *Harris* 625–6 ; 1 *Barr* 319 ; 4 *Harris* 463 ; 9 *Barr* 193 ; 2 *Id.* 114 ; 4 *Id.* 486 ; 16 *Ser. & R.* 395 ; 2 *Watts* 23.

The opinion of the Court was delivered by

[Bush v. Johnston.]

BLACK, C. J.—We have considered this case, and are of opinion that it was properly decided in the Common Pleas for the reasons which are embodied in the charge of the President Judge.

Judgment affirmed.