SALT LAKE CITY v. SCHUBACH et al. (UNITED PACIFIC INS. CO., Intervener).

No. 6778. Decided May 31, 1945. (159 P. 2d 149).

Rehearing Denied July 16, 1945.

See 42 C. J. S., Indemnity, sec. 31; 25 Am. Jur., 701.

*E. Ray Christensen,* City Atty., and *E. C. Jensen,* both of Salt Lake City, for Salt Lake City.

*R. A. Burns* and *H. P. Thomas,* both of Salt Lake City, for United Pacific Ins. Co.

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for Tracy Loan & Trust Co.

*Elias L. Day* and *Arthur E. Moreton,* both of Salt Lake City, for William Schubach.

LARSON, Chief Justice.

An action to determine the liability of a property owner, and also of a tenant of the property, to the city, for damages suffered by the city due to injuries sustained by a pedestrian through defects in a trap door over a chute or vault under the sidewalk installed and maintained for the benefit of the property.

Defendants Brisacher are the owners of a three story building at the northeast corner of the intersection of Main Street and Broadway in Salt Lake City. Many years ago, the owners of the building with the consent of the city, constructed in and under the sidewalk on the south side of the building, a chute into the basement of the building for the putting of coal or merchandise into the basement. On the sidewalk over the opening into the chute was a metal trap door. In 1939 defendant Schubach leased the south part of the ground floor of the building for a jewelry store. North of this, part of the ground floor was subsequently leased by the National Shirt Company. The northern part of the ground floor and the entire second and third floors were leased by other tenants. Part of the basement had been leased to and was operated as a shoe store by the Campus Boot Shop, entered by a railed-in stairway in the south sidewalk. The chute above mentioned entered the building east of the Shoe Store. The lease to Schubach describes the property let as:

"The South Half of the store-room known as 279 South Main Street Salt Lake City, Utah, together with basement space thereunder, formerly occupied by Schramm-Johnson Drugs, and having a frontage of approximately twenty-two feet on Main Street and a depth of approximately seventy feet."

The property leased to the National Shirt Company is described as:

"The Store-room known as No. 277 South Main Street, Salt Lake City, Utah, together with basement space thereunder, said store-room having a frontage of approximately twenty-two feet on Main Street,

and a depth of approximately seventy feet." (At the date of the Schubach lease, this store was known as the North half of No. 279 South Main.)

The United Pacific Insurance Company had issued a policy whereby it undertook to indemnify the city for any losses sustained by it through defects in the sidewalks. During January, 1942, due to some worn rivets in the trap door over the chute, a part of the metal lining the concrete edge of the hole, stuck up above the sidewalk level. A Mrs. Sabey tripped on this iron and sustained injuries, sued the city and recovered a judgment for $7875.50. The insurance company reimbursed the city in this amount. Thereafter the present action was brought by the city against the owner and one tenant of the store building (Schubach) to recover the amount of the judgment. Since the city had been reimbursed by its insurer the insurance company intervened and became, for all practical purposes, the plaintiff in this action. Tracy Loan & Trust Company is guardian of the estate of Jules Brisacher, an incompetent, and both will hereafter be spoken of as the Owner; the word tenant will be used to designate the defendant Schubach; the plaintiff will be called the City, and the intervening Insurance Company, called the Insurer. The trial court entered judgment against the city in favor of all defendants, against the Insurer as to the owner, and in favor of the Insurer as against the tenant. Plaintiff appeals from the judgment against it, the Insurer appeals from that portion of the judgment in favor of the Owner, and the tenant cross-appeals from the judgment against him, and from the judgment in favor of the Owner.

The appeal poses the following questions:

1. Is the owner responsible over to the city for the amount of the Sabey judgment?

2. Has the city a valid action against the tenant for the amount of the Sabey judgment?

3. If either of the above questions be answered in the affirmative, since the city has been made whole through

insurance, can this action be maintained for the benefit of the insurer?

We will consider them in order.

1. That the city is charged with the duty of maintaining the sidewalks within its limits in a safe condition for use in the usual mode by pedestrians thereon is so well established as to need no citations of authority. See ▮▮▮ discussion of this rule and citations in the opinion of Mr. Justice Moffat in *Jensen* v. *Logan City*, 96 Utah 53, 83 P. 2d 311.

> "A pedestrian has the right to assume that the sidewalk is in a reasonably safe condition, and to act upon that assumption." *Coffey* v. *City of Carthage*, 186 Mo. 573, 85 S. W. 532. See also *Bills* v. *Salt Lake City*, 37 Utah 507, 109 P. 745.

That action will lie against the city for injuries suffered due to defects in the sidewalk is well settled, but such liability must be predicated upon negligence. *Morris* v. *Salt Lake City*, 35 Utah 474, 101 P. 373; *Ray* v. *Salt Lake City*, 92 Utah 412, 69 P. 2d 256, 119 A. L. R. 153. In the instant case the fact of injury, the cause thereof, the amount of damages and the negligence of the city are not in issue. Such matters were settled and established by the judgment in the case of *Sabey* v. *Salt Lake City*, which judgment concludes these parties as to those issues. Having paid that judgment can the city recover over against the owner of the abutting property? The right of an abutter to construct vaults under the sidewalk, or to make openings therein for coal chutes or cellar ways is not an incident of ownership of the abutting premises. *Donnelly* v. *Rochester*, 166 N. Y. 315, 59 N. E. 989; *Jorgensen* v. *Squires*, 144 N. Y. 280, 284, 39 N. E. 373. The legislature may however authorize such limited use of the sidewalks for the more convenient and beneficial use of the adjacent property. *Perry* v. *Castner*, 124 Iowa 386, 100 N. W. 84, 66 L. R. A. 160, 2 Ann. Cas. 363; *Id.*, 130 Iowa 703, 107 N. W. 940; *Jorgensen* v. *Squires*, supra; *Gustafson* v. *Hamm*, 56 Minn. 334,

57 N. W. 1054, 22 L. R. A. 565. Such special privileges or rights are justified as in the public interest by increasing business facilities, encouraging and making practicable better buildings and improvements on property and adding to the taxable value. *Hatfield* v. *Straus,* 189 N. Y. 208, 82 N. E. 172; *Jorgensen* v. *Squires,* supra; *Donnelly* v. *Rochester,* supra. The legislative power to permit such use of the sidewalks has been delegated to the municipalities. This follows from the grant to the cities of control over the streets and sidewalks. Secs. 15-8-23 and 15-8-11, U. C. A. 1943; *Burton* v. *Chicago,* 236 Ill. 383, 86 N. E. 93, 15 Ann. Cas. 965; *Jorgensen* v. *Squires,* supra. A city may impose conditions upon the abutter in respect to excavations under the sidewalks. *Davis* v. *Clinton,* 50 Iowa 585. A cellar vault, chute or passageway so constructed by permission of the municipality, is in itself a species of property, and the owner of the abutting property may protect it against trespassers as fully as other property. *Parish* v. *Baird,* 160 N. Y. 302, 54 N. E. 724, affirming 19 App. Div. 629, 45 N. Y. S. 1145; *In re Kings County Elevated R. Co.,* 105 N. Y. 97, 13 N. E. 18. In some states, notably New York, it is regarded as an easement appurtenant to the abutting property. Other authority states that it is not an easement in a legal sense, but a right based upon a revocable license or consent. All recognize however that it is a valuable or property right, which in the absence of express restrictions passes with the title to the adjacent premises. *Westliche Post Ass'n* v. *Allen,* 26 Mo. App. 181; *Parish* v. *Baird,* supra. Permission to construct such structures under the sidewalk may be inferred from acquiescence in their maintenance for many years. *Chicago* v. *Robbins,* 2 Black, U. S., 418, 425, 17 L. Ed. 298; *Gridley* v. *Bloomington,* 68 Ill. 47; *Village of Canandaigua* v. *Foster,* 156 N. Y. 354, 50 N. E. 971, 41 L. R. A. 554. It is not a presumption of a grant of a permanent right in the street, nor of a title. *Deshong* v. *New York City,* 176 N. Y. 475, 483, 68 N. E. 880. And so, if made with municipal assent, express or implied, such vault, chute or cellar opening is not a nuisance

per se, but may become a nuisance if not properly constructed or maintained for the safety of the public. *Perry* v. *Castner,* supra; *Donnelly* v. *Rochester,* supra. The person who, by permission, constructs such an opening impliedly agrees to do so with due care for the safety of the public. And so too does one who continues to maintain the same as an adjunct or access to the property. *Jennings* v. *Van Schaick,* 108 N. Y. 530, 15 N. E. 424, 2 Am. St. Rep. 459; *Babbage* v. *Powers,* 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398; *Canandaigua* v. *Foster,* supra; *Devine* v. *National Wall Paper Co.,* 95 App. Div. 194, 88 N. Y. S. 704, affirmed 182 N. Y. 560, 75 N. E. 1129. The adjoining owner has no more right than any other person to do an act which renders the use of the sidewalk hazardous, or less secure than it would be but for such an act. When he does so he is guilty of a nuisance and liable to any person, who using due care, is injured thereby. *Bush* v. *Johnston,* 23 Pa. 209; *Rowell* v. *Williams,* 29 Iowa 210; *Boston* v. *Coon,* 175 Mass. 283, 56 N. E. 287; *Robinson* v. *Mills,* 25 Mont. 391, 65 P. 114; *Wilder* v. *Concord,* 72 N. H. 259, 56 A. 193; *Severin* v. *Eddy,* 52 Ill. 189; *Benjamin* v. *Metropolitan St. Ry Co.,* 133 Mo. 274, 34 S. W. 590. The person who created or continues the nuisance, is thus liable, irrespective of the question of negligence on his part. *Congreve* v. *Smith,* 18 N. Y. 79; *Davis* v. *Rich,* 180 Mass. 235, 62 N. E. 375; *Copeland* v. *Seattle,* 33 Wash. 415, 74 P. 582, 65 L. R. A. 333; *Robbins* v. *Chicago,* supra; *Lafayette* v. *Blood,* 40 Ind. 62. And because the owner is bound at his peril to keep the excavation covered, to keep the sidewalk as safe as if the excavation had not been made, he is not relieved from liability by the fact that the covering was without his knowledge rendered unsafe. *Congreve* v. *Smith,* supra; *Moore* v. *Townsend,* 76 Minn. 64, 78 N. W. 880; *Ray* v. *Jones & Adams,* 92 Minn. 101, 99 N. W. 782. The doctrine of these cases has been questioned in *Fisher* v. *Thirkell,* 21 Mich. 1, 4 Am. Rep. 422, which held that where premises were under lease to a tenant and the lease did not impose

the duty of repair on the landlord, he could not be held liable if he properly constructed the place.

The ultimate liability is upon the author or continuer of the nuisance. When the owner installs such passageways, vaults or coal holes, it is presumably done for the benefit of his property.

"Neither the public or other individuals can derive any possible advantage from such a use of the sidewalk, but it is solely for the defendant's benefit, and he must see to it that he does not endanger the safety of others, and that he incommodes the public as little as possible." *Nelson* v. *Godfrey*, 12 Ill. 20, 23.

He is permitted to excavate and install such structures on the condition that he *shall use more than ordinary care.* *Nelson* v. *Godfrey*, supra; *Gridley* v. *Bloomington*, supra; *Babbage* v. *Powers*, supra, citing Dillon on Municipal Corporations.

When he constructs a coal hole, or makes some other special use of the public sidewalk, he undertakes to see that such structure is kept in proper condition so that no member of the public using such sidewalk is injured thereby. This duty is a continuing one, appurtenant as it were to the land, and liability for failure in duty cannot be delegated nor can it be terminated except by transfer of the land or surrender of the privilege of maintaining the structure.

Perhaps the leading case on this subject is *Trustees of the Village of Canandaigua* v. *Foster*, supra, wherein the owner of property leased to a tenant was held liable for injuries sustained on account of defects in a grating in the sidewalk. After setting out that the grate was installed with consent of plaintiff; or that after a lapse of some time such consent would be implied, the court, speaking of defendant, said [156 N. Y. 354, 50 N. E. 972]:

"It was his duty, however, as long as he owned and was in full possession of the premises, to use reasonable diligence to keep the grate in repair, so that it would be as safe as any other part of the

sidewalk. * * * It was built for his accommodation, and was a benefit to his property only; and the law placed upon him the obligation of using due care to keep it in a suitable and safe condition for the public to walk over as a part of the sidewalk. Proper construction, in the first place was not enough to relieve him from liability; but the duty of inspection and repair continued while he owned and was in the exclusive possession of the premises. The duty ran with the land as long as the grate was maintained for the benefit of the land. * * * While the owner cannot be held liable in this action for failing to repair the entire sidewalk in front of his premises, was he properly held liable for failing to keep in repair the grate itself, which was his own structure? This depends upon the duty that ·he assumed when he cut a hole in the sidewalk, and covered it with the grate. That duty included proper construction in the first place, and reasonable care on the part of the owner to keep the grate in repair thereafter, as long as he continued in possession. The duty sprang from the necessity of having safe sidewalks, and as the necessity is continuous, so is the duty. Upon no other ground can the construction of a grate in the sidewalk, which is an interference with a public highway, be justified, even when permission is duly granted. Upon the transfer of the entire interest and possession to another, as the duty runs with the land, it would be cast upon the grantee. * * * The implied duty assumed when the hole was cut and the grate placed over it requires reasonable precaution on the part of the owner to protect the public as long as he remains the owner and is in possession of any part of the building on the abutting land."

This case has been cited and followed extensively as a leading case. *Security Savings & Commercial Bank* v. *Sullivan,* 49 App. D. C. 119, 261 F. 461; *City of Seattle* v. *Puget Sound Improvement Co.,* 47 Wash. 22, 91 P. 255, 12 L. R. A., N. S. 949, 125 Am. St. Rep. 884, 14 Ann. Cas. 1045; *Mitchell* v. *Thomas,* 91 Mont. 370, 8 P. 2d 639; *Sanders* v. *First Nat. Bank of Pauls Valley,* 183 Okl. 112, 80 P. 2d 207; *Joel* v. *Electrical Research Products,* 2 Cir., 94 F. 2d 588. Other cases holding that the duty of maintaining structures in the sidewalk is on the owner of the land, and he may not avoid this duty, or the liability for injuries suffered by defects in such structures by leasing the premises are *Jessen* v. *Sweigert,* 66 Cal. 182, 4 P. 1188; *Burke* v. *Schwerdt,* Cal. Sup., 6 P. 381; *Granucci* v. *Claasen,* 204 Cal. 509, 269 P. 437; 59 A. L. R. 435; *Village of Jeffer-*

*son* v. *Chapman*, 127 Ill. 438, 20 N. E. 33, 11 Am. St. Rep. 136; *Norton* v. *St. Louis*, 97 Mo. 537, 11 S. W. 242; *Monsch* v. *Pellissier*, 187 Cal. 790, 204 P. 224; *City of Grand Forks* v. *Paulsness*, 19 N. D. 293, 123 N. W. 878, 40 L. R. A., N. S., 1158; *Ryder* v. *Kinsey*, 62 Minn. 85, 64 N. W. 94, 34 L. R. A. 557, 54 Am. St. Rep. 623. So there can be no doubt that the owner of abutting premises has the duty to maintain them in such a state of repair that persons passing by will not be injured, but can he divest himself of this liability? On this question there is a division of opinion in the authorities. They fall into three groups, holding: (a) That the owner cannot divest himself of this liability except by sale of the property. This is the burden of many of the cases referred to supra. (b) That he may divest himself by leasing the entire building. (c) That he may do so by leasing part of the building, including the exclusive use of the structure in and under the sidewalk. Some courts have held that when the owner leases the entire building "from foundation to roof" the tenant steps into his shoes, and the tenant and not the owner is liable for injuries resulting from failure to repair. *City of Seattle* v. *Puget Sound Imp. Co.*, supra; *City of Spokane* v. *Fisher*, 106 Wash. 378, 180 P. 139; *City of Lewiston* v. *Isaman*, 19 Idaho 653, 115 P. 494; *City of Philadelphia* v. *Merchant & Evans Co.*, 296 Pa. 126, 145 A. 706; *Updegraff* v. *City of Ottumwa*, 210 Iowa 382, 226 N. W. 928; *Simms* v. *Kennedy*, 74 Fla. 411, 76 So. 739, L. R. A. 1918C, 297. This is upon the theory that the tenant having full and exclusive possession for a term, with the legal duty and obligation to repair and maintain is in the same position as a purchaser would be and will be so considered in law; and the owner having no right to enter to make repairs will not be held to responsibility for failure to do so. *Philadelphia* v. *Merchant & Adams*, supra.

However, if the defects causing the injury existed at the time of making the lease, the owner does not thereby escape liability. *Updegraff* v. *City of Ottumwa*, supra;

*Simms* v. *Kennedy,* supra; *Cool* v. *Rohrbach,* Mo. App. 21
S. W. 2d 919, are cases holding that where the defect
amounts to a nuisance, owner and tenant are jointly liable,
the one for allowing the nuisance to come into being, and
the other for maintaining it. Still other cases hold that
when the owner leases parts of the building, and the ap-
purtenance which caused injury through being out of re-
pair is in the exclusive possession and control of the tenant,
he and not the landlord is liable. *West Chicago Masonic
Ass'n* v. *Cohn,* 192 Ill. 210, 61 N. E. 439, 55 L. R. A. 235,
85 Am. St. Rep. 327; *Hamelin* v. *Foulkes,* 105 Cal. App.
458, 287 P. 526; *Runyon* v. *City of Los Angeles,* 40 Cal.
App. 383, 180 P. 837; *Glass* v. *American Stores Inc.,* 110
N. J. L. 152, 164 A. 305. In *Mitchell* v. *Thomas,* supra, the
court summarizes the rules as follows [91 Mont. 370, 8
P. 2d 641]:

"* * * where the owner of an entire property has placed in the
sidewalk an appliance for his own use, as a stairway, grating, or
coalhole, he is primarily liable if the appliance becomes defective
while he remains in possession of the premises. (citations) But, if
the owner is out of possession because he has leased the entire prop-
erty, the sidewalks being in good repair when the property was de-
livered to the tenant, the tenant, and not the owner, is responsible to
a third person injured by reason of a failure to keep in repair.
* * * 'A tenant in possession is, for all practical purposes, the
owner of the property.' (*Philadelphia* v. *Merchants & Evans Co.,*
296 Pa. 126, 145 A. 706, 707), and the rule is that, in absence of a
covenant on part of the landlord to repair, that duty rests upon the
tenant. (citations) * * * Where, as in the case at bar, a por-
tion of the building is controlled by the owner who has leased the
ground floor of the building with an abutting sidewalk in which
there is a coalhole which has become defective after the lease by
reason whereof a third person has been injured, the authorities are
in conflict. * * * The cases hold generally that the owner is re-
sponsible to a pedestrian suffering injury due to a defective sidewalk
in front of a building, leased to different tenants, where the owner
exercises general control of the entire building. * * *"

For negligent use of an appurtenance in good condition
the weight of authority holds the tenant alone liable.
*Dammeyer* v. *Vorhis,* 63 Ind. App. 427, 113 N. E. 764;

*Frischberg* v. *Hurter,* 173 Mass. 22, 52 N. E. 1086; *Muller* v. *Baskowitz,* 157 A. 389, 10 N. J. Misc. 4; *Lucid* v. *Citizens' Inv. Co.,* 49 Cal. App. 257, 193 P. 161.

A further reason is offered by some of the cases as to why, in a case such as this, the owner should be held liable. Remember this is a suit *by the city* to recover over against the owner and the tenant, the amount of damage it sustained by failure of defendants to properly maintain the trapdoor in the sidewalk. The Supreme Court of Washington has considered this matter a number of times, always adhering to the rule that as between the city, seeking to recover over and the owner, the latter cannot escape his liability to the city by a plea that he had leased part of the premises and the trapdoor device to a tenant. In *Hayes* v. *Seattle,* 43 Wash. 500, 86 P. 852, 853, 7 L. R. A., N. S., 424, 117 Am. St. Rep. 1062, the court in holding the city liable for injuries to one who fell into an open trapdoor in the sidewalk said:

"This opening was upon a prominent thoroughfare, in constant use by pedestrians. The opening was not guarded in any way, and to open it at all was a menace to every person who happened at that time to be passing. These facts the city knew or ought to have known, and we think the court rightly held it responsible."

This statement was quoted by the same court in *City of Spokane* v. *Fisher,* supra, and the court goes on [106 Wash. 378, 180 P. 141]:

From this the conclusion was drawn in that case that the city was liable, and if the city was liable because it gave the property owner permission to install the trapdoor, why should not the owner be liable over because of the tenant's negligence? In other words, if the city is liable because of the owner's negligence, why is not the owner liable because of his tenant's negligence?"

And in the Fisher case, concludes as follows:

"Under circumstances such as exist here, it has been generally held that a landlord who secures the privilege from a city to install such an instrumentality in the sidewalk for his own profit and benefit

is liable over, not only for defective installation and maintenance, but also for negligent operation."

In *Seattle* v. *Puget Sound Imp. Co.*, supra, the court held that since the trapdoor was placed in the sidewalk exclusively for the benefit of the building, it was the duty of the owner to maintain it reasonably safe for passerby and the city could recover over against the owner even though the property was leased. And in *City of Spokane* v. *Crane Co.*, 98 Wash. 49, 167 P. 63, 64, the court, after stating the city was liable because of its duty to the public to keep the streets reasonably safe, said:

"But the person who actually created or maintained for his own use the dangerous condition is, *as between the city and himself, still primarily liable* on elementary principles, and regardless of any statute or charter provision so declaring, simply because the dangerous condition was the result of his own personal negligence. *As between him and the city*, his was the active negligence, while that of the city was merely passive. These considerations make it plain that there is no differentiating significance to be found in the fact that the active negligence in this case was that of the tenant, who had complete possession and control of the premises, and not that of the owner. They also make it equally plain that this case is governed in principle by the decision of this court in *Seattle* v. *Pugent Sound Improvement Co.*, 47 Wash. 22, 26, 91 P. 255, 257, 12 L. R. A., N. S., 949, 125 Am. St. Rep. 884, 14 Ann. Cas. 1045, where adopting the language of Judge Dillon (Dillon, Municipal Corporations [6th Ed.] § 1035), it is said: 'If a municipal corporation be held liable for damages sustained in consequence of the unsafe condition of the sidewalks or streets, it has a remedy over against the person by whose wrongful act or conduct the sidewalk or street was rendered unsafe, unless the corporation was itself a wrongdoer as between itself and the author of the nuisance.' Notwithstanding the city's liability to the public, it was under no duty to notify appellant of a condition of appellant's own creation. It was not a wrongdoer as between itself and appellant. The city and appellant were not in pari delicto; they were not joint tortfeasors. *City of Lowell* v. *Short*, 4 Cush., Mass., 275." (Italics added.)

Going on the court points out that while the title to the building was in the Railroad Co., the lessee had a 20 year ground lease, under which he erected the building, including

the hole which caused the accident, for his own use, and had always been in sole occupancy of the building and says:

"The record thus precludes any inference that the railway company erected the building or placed the faucet in the sidewalk or made or maintained or authorized the making or maintaining of the hole."

And concludes that because of such facts the title holder was not liable in that case, but all obligations were upon the tenant who by building the structure in the sidewalk was the person who assumed the liability to the city to maintain the same. Cases from other jurisdictions place the duty of maintaining such an instrumentality in such a way as to avoid injury to the public directly upon the owner; even though the active negligence is that of the tenant or independent contractor. *French* v. *Boston Coal Co.,* 195 Mass. 334, 81 N. E. 265, 11 L. R. A., N. S., 993, 122 Am. St. Rep. 257; *Jennings* v. *Van Schaeck,* supra; *Grand Fork* v. *Paulsness,* supra; *Downey* v. *Low,* 22 App. Div. 460, 48 N. Y. S. 207; *Hart* v. *McKenna,* 106 App. Div. 219, 94 N. Y. S. 216; *Anderson* v. *Caulfield,* 60 App. Div. 560, 69 N. Y. S. 1027.

There are many cases cited by the parties and many not cited which state the rule, commonly called the Illinois rule, that where the owner leases a part of the premises, including the exclusive use of the device in or under the sidewalk, and the tenant has the obligation to maintain and repair, the owner is not liable for injuries resulting from disrepair, if the device was in safe condition when the property was leased. The leading case on this theory is *West Chicago Masonic Ass'n* v. *Cohn,* supra. But most of those cases deal with actions brought by the party injured, directly against the owner or against the tenant, or both, and the question was purely one of negligence on the part of the defendant toward the person injured. Of course such action must be predicated upon negligence—the failure to maintain an appliance in proper order, or the negligent use there-

of such as leaving a hole open. Clearly enough, as to the person injured, the liability rests upon the party negligent, the party who creates, or maintains a dangerous situation, whose failure to maintain the thing he is using for his own benefit or purpose causes the accident. But where the city is sued it is not for its own active negligence but on its legal responsibility for failure to see that the owner of the device properly maintained it. When the city then seeks to recover over, its action sounds in implied contract, or on legal responsibility similar to that of the city, for failure of the owner to observe toward the city the obligation assumed when he was permitted to install the device and make special use of the sidewalk—the obligation to the city to see that the device was maintained properly and safely.

The court found that the tenant was in exclusive possession and control of the chute. Evidence on this issue is conflicting, but it is clear from the record that the National Shirt Shop had a right of access to the chute. In fact the Shirt Shop paid for enlarging the chute so that they might get larger parcels delivered that way. Henry J. Webbert, the Manager of that concern, testified that they had used it but once during their tenancy. The explanation for this was that it was found more convenient to accept deliveries in their store and take them directly to the basement from there, rather than having them delivered by way of the chute on the Third South Street side of the building. He also testified that the metal door separating the Shirt Shop's portion of the basement from the chute and from that used by Schubach was locked on Schubach's side more of the time than it was open. He said, however, that when request was made to open the door it would always be done promptly and without protest, so that they might have had access to the chute at any time. On the other hand Robert Starr, assistant manager of Schubach Jewelry testified that he could remember only once that this door was locked—that when it was locked it was through inadvertence; and upon request was always promptly opened. Rep-

resentatives of the owner testified that they knew there had been some trouble about the locking of the metal door on Schubach's side, that the reason Schubach insisted that the door be locked was that he had jewelry stored in the basement. From this evidence the trial court found that the chute and the door were in the exclusive possession and control of Schubach. This finding is not supported by the evidence. The chute and the room enclosing it were not included in the lease—other tenants had a right to use them, which right was recognized by Schubach, and also by the owner. In fact the chute was maintained as a convenience for the tenants. Schubach's purpose in keeping the door locked, if indeed he did so, was protection to his own property stored in the basement rather than a desire to exclude the other tenants from using the chute. If this were not true, some reluctance to unlock the door upon request would have been evidenced. We conclude therefore that the area enclosing the chute, and the chute itself, was reserved by the owner for the use of either of the tenants.

It seems to us that the Cohn case and those following it, what we shall call the Illinois line of cases, overlook one fundamental essential to a sound rule of liability in this situation, namely: The fact that the sidewalks are part of the public highway, dedicated to use by the public, and the municipal corporations have no right or authority to grant individuals the use thereof which would in any way interfere with the use by the public. *Brough* v. *Ute Stampede Ass'n,* 105 Utah 446, 142 P. 2d 670. However, a properly constructed coal hole, grating, or vault light, kept in good repair does not interfere with such use in any way, so that the municipal corporation may grant abutting landowners the right to make such a use of the sidewalk; but only, however, on condition that the owner of the abutting property properly construct the grate, coal hole, or vault light, and that he maintain such structure in such condition that the public may safely use the sidewalks thereover. This is in the nature of a contractual obligation and the lot owner may not escape its liabilities by leasing a portion of the property, or by contract

with the lessee thereof, for while the rights under contracts may be assigned, liabilities may not.

Only by conveying the land, or by leasing it in entirety, so that the lessee is then in the shoes of the owner, may he escape liability. If this be not the rule then the municipality has no power or authority to allow the encroachment on the sidewalk, and the landowner should be liable as a trespasser.

We conclude then that whatever rights the owner may have against the tenant such right if any cannot be urged as a defense in an action brought by the city against him to recover over losses imposed upon the city by defects in the structure or device which was placed in the sidewalk by or for the special benefit of his property. It follows that upon legal principles and also upon the facts in this case, the court erred in holding the owner not liable over.

2. Has the city or the insurer a valid action against the tenant for the amount of the Sabey judgment? The overwhelming weight of authority is to the effect that where the tenant has the use, or possession of structures in or under the sidewalk with the obligation of maintenance and repair, and permits such structures or devices to be out of repair as a result of which another is injured, the tenant is liable therefor to the injured party. This upon the theory of the tenant's negligence, and of his permitting and maintaining a nuisance—a place of danger upon a public walk. An action for damages sustained lies against the tenant by the injured party. *West Chicago Masonic Ass'n* v. *Cohn*, supra.

It has been held that such injured party may bring an action against the owner, the tenant, and the city jointly. *Moore* v. *Townsend*, supra. But where the injured person sues only the city and recovers against it, may the city recover over against the tenant? See cases cited on this discussion supra. See also Dillon Action over Para. 1728, Fifth Ed., Vol. IV. Shearman & Redfield, Rev. Ed., Sec. 322; 5 Thompson, Negl., Sec. 6359.

The question then arises, if the owner be held liable by reason of his implied contract with the city to keep the sidewalk opening in repair, what is the status of the occupant of the land with respect to action by the city to recover over? There is very little authority on this question, as most cases arise in suit against either the owner or the occupant of the land—and the court decides that either one or the other is liable, depending upon whether the jurisdiction follows the New York line of cases or the Illinois line of cases set out supra. All cases agree, however, that as between the owner and the tenant in the absence of contract, it is the tenant's primary duty to repair, and in *Moore* v. *Townsend,* supra, the court said:

"The occupants and the owner of the building, without surrendering control over it, permitted the painter to create a nuisance in the public street when they allowed him to put the ladder in a position over the walk where it was a continual menace to all persons within its reach should it fall down. They, as well as the defendant village, maintained this nuisance for several weeks, and, as before stated, for at least 13 days after all necessity for use of the ladder had passed. By employing an independent contractor the owner or occupants of the building could not relieve themselves of the continuing duty which they owed to the public not to create or maintain a public nuisance on their premises. Nor could the village absolve itself of a like duty in respect to permitting a nuisance to be maintained, partly or wholly, in its streets."

Appellant argues that an action to recover over does not lie because the city has a statutory duty to maintain the sidewalks, and such duty may not be delegated to another, in this case tenant or the landowner. In the first place, it is not a question of delegating a duty or a liability —the liability of the city has already been determined in *Sabey* v. *Salt Lake City* No. 68855, and is now beyond question. What plaintiff now seeks to do is to secure reimbursement. This question was considered in *Washington Gaslight Co.* v. *District of Columbia,* 161 U. S. 316, 16 S. Ct. 564, 568, 40 L. Ed. 712, wherein the court posed the question as to whether the District could recover from

the Company the amount of damages it was compelled to pay one injured by a defective gas box in the sidewalk, which box it was the company's duty to repair. Answering the question:

"An affirmative answer to this proposition is rendered necessary by both principle and authority. This court said in *Chicago* v. *Robbins*, 67 U. S. [418], 2 Black 418, 422 [17 L. Ed. 298, 302]: 'It is well settled that a municipal corporation, having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrongdoer.' And the same doctrine is reiterated, in almost the identical language, in *Robbins* v. *Chicago*, 7 U. S. 657, 4 Wall. 657, 670 [18 L. Ed. 427, 429].

"The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers."

To the same effect is *Robertson* v. *City of Paducah,* 146 Ky. 188, 142 S. W. 370, 40 L. R. A., N. S., 1153, wherein the city recovered over from the contractor, damages it paid to a pedestrian who fell into a ditch constructed by the contractor, and left insufficiently guarded by his employees. See also *City of Seattle* v. *Puget Sound Imp. Co.,* supra; *Gnau* v. *Ackerman,* 166 Ky. 258, 179 S. W. 217; *City of Spokane* v. *Fisher,* supra.

As to such a situation, this court said in *Morris* v. *Salt Lake City,* supra [35 Utah 474, 101 P. 378]:

"While the city could not avoid liability as to others with respect to primary duties imposed upon it by law, it nevertheless could, by contract, require Mr. Birch to indemnify it as against all such' claims."

3. Where the city has been made whole by its insurance carrier, can an action to recover be maintained for the benefit of the insurer?

The many cases cited supra to show the liability of the

owner and the tenant to the city in a suit to recover over establish that while the city is at fault in not seeing that the sidewalks are maintained in safe conditions for use by pedestrians, its fault and the fault or delict of the parties who make special use of the sidewalks are of a different kind or grade, and the parties are not in pari delicto. Wherefore the city can recover over. We see no reason therefore why the insurer, having reimbursed the city may not be the beneficiary in this action, or why the ordinary rule of subrogation should not apply. Duties, obligations, and liabilities may be of different order or degree. One may be a primary one, and another a secondary one. One may arise only in the event of a failure of the other. Both may exist concurrently as to a third party, but as between those liable or under duty, the one often grows out of the failure of the other. The matter of relative rights as between parties liable, and the right of subrogation of one liable as against the other is discussed at some length by Mr. Justice Wolfe in *Beaver County* v. *Home Indemnity Co.*, 88 Utah 1, 52 P. 2d 435. Subrogation is said to be a creation of equity for the purpose of effecting an adjustment between parties so as to secure ultimately the payment or discharge of a debt by the person who in good conscience ought to pay it.

It is argued that the intervenor should not be permitted to recover because it received premiums in payment for undertaking this risk. Such premiums were paid out of the taxpayers' money, and tenant argues that it would be inequitable to now allow the intervenor to recover from a single taxpayer, the whole amount paid out in indemnification for the Sabey judgment. Such argument overlooks fundamentals. In the first place, it is a matter of common knowledge that casualty policies uniformly carry a subrogation clause assigning to the insurer all rights of the insured in case of loss. This is a part of the consideration for writing the policy, in addition to the premium paid—this contingent right to recover over against the primary tort feasor. Had

not the policy contained such a subrogation agreement, or were we to hold that such agreement were of no effect, insurance rates would be higher, and plaintiff would either have to spend more of the taxpayers' money for its protection, or assume the risk itself. There is no cause to mention the fact that it was the taxpayers' money which purchased protection in the instant case—it would make no difference in legal principles whose money it was that paid the premiums, or who was the insured, the result would be the same. But just what result would follow an acceptance of defendant's argument? Either one of two things would be done: As suggested above insurance rates would be raised for all casualty insurance; or else, all carriers of such policies would refuse payment until the insured had brought suit against the tort feasor himself, so that the issue of payment and subrogation could not be raised. Either result would not be particularly desirable. Tenant appeals to the equitable principles, the conscience of the court, saying that since the taxpayers have paid for the insurance, it is unjust to now place the burden of the loss upon a single taxpayer. Is not this the same as saying:

"Certainly I dug a hole in the street, but the taxpayers built that street and it would now be inequitable to place the entire burden of repairing it upon me, one taxpayer."

As far as fundamental principles are concerned, we see no difference between the argument urged here and the question posed. The argument answers itself.

The matter of payment of premiums and of protection by insurance are matters of vital moment between the assured and the insurer, but usually those matters are of no concern to others not parties to the contract of insurance. See *Anderson* v. *Industrial Commission and Milne*, 108 Utah 52, 157 P. 2d 253; *Johanson* v. *Cudahy Packing*, 107 Utah 114, 152 P. 2d 98.

When the Sabey action was commenced against the city the owner and tenant were given notice by the city to come

in and defend, or participate in the defense of the action. Neither availed themselves of the opportunity.

We see no reason why this action should not lie, or why the owner or tenant can avoid primary liability, by raising the question as to whether the city or its insurer is the party now "out of pocket," as long as owner or tenant is only asked to pay once.

The judgment against the plaintiff city is affirmed. The judgment against Schubach, the tenant, was on the theory that he was in exclusive possession and control of the coal chute in question. Since we have set aside that finding, the judgment in favor of the insurer, United Pacific Insurance Company, and against the tenant must be reversed and remanded to the District Court for a new trial so that the parties may present evidence, and the court may determine whether the tenant may be liable upon the theory herein set forth. The judgment against the insurer and in favor of Tracy Loan & Trust Co., as guardian of the estate of Jules Brisacher, one of the owners, is reversed, and remanded to the District Court for a new trial.

Costs involved in the appeal from the judgment in favor of the owner are awarded to the insurer against the owner; the tenant awarded his costs against the city, the insurer and the owner, represented by Tracy Loan & Trust Co.

TURNER, J., concurs.

McDONOUGH, Justice (concurring).

I concur in the reversal of the judgment against the plaintiff and in favor of Tracy Loan and Trust Company as guardian, for the reason stated in the opinion of Mr. Chief Justice LARSON. I am of the opinion, however, that the judgment against defendant William Schubach should be affirmed, and hence dissent from the order reversing it. Under the evidence the trial court would be justified in finding that the tenant, Shirt Company, used the chute in question but once during its tenancy. Such court might properly find that any right to use the

chute which such company may have had by arrangement with the landlord and Schubach had been abandoned by non-user. Hence its finding that Schubach was in exclusive possession should not be disturbed. It was such a possession and use as would make the rule of exclusive possession applicable.

WADE, Justice (concurring).

I concur with the reasoning necessary to the result reached in the opinion of Mr. Chief Justice LARSON; however, much that is said therein is not necessary to a decision of this case and as to those matters I do not express an opinion.

WOLFE, Justice (concurring in part, dissenting in part).

I concur with all of the results except the reversal of the judgment against defendant Schubach. I also agree with much of the reasoning of the opinion of Mr. Chief Justice LARSON. But there are some statements with which I cannot agree. For example, I cannot agree that where the city is sued for injury caused by a defective door on a sidewalk chute, the city is not sued

"for its own active negligence but on its legal responsibility for failure to see that the owner of the device properly maintained it."

Nor can I agree that the city has no power to allow an encroachment on the sidewalks of the city unless the abutting owner or someone who stands in his place is liable over to the city in event the city is sued for injuries to pedestrians. There are also many propositions of law recited as a background for the holding which I do not think are necessary to the result and I express no opinion as to them.

I agree that as between the parties to this suit the question of whether Salt Lake City was liable for damages to Sabey cannot be re-examined. All of the defendants had notice of the pendency of the Sabey action against the City. The City tendered to them the right to appear and defend. They failed to do so and are now bound by the

determination in the Sabey suit that the city was liable to Sabey.

As to the owners of the building the opinion notes that there are many theories regarding the basis of liability. I agree with Mr. Chief Justice LARSON that the liability of the owner "sounds in implied contract * * *" that the owner, as a condition to the construction and maintenance of a door or chute through the sidewalk, impliedly agreed with the city to keep said door or chute in repair. This obligation of the owner to the city could not be and was not avoided by the leasing of the premises. A lease agreement might give the owners an action over against the tenant for failure to keep the door or chute in repair, but such an agreement, wherein the tenant assumed responsibility for repairing the door or chute, could not divest the owners of liability to the city in a suit such as this.

As to the tenant, I am unable to determine from the opinion of Mr. Chief Justice LARSON his answer to question number two as posed by him. However, I agree with the general statement that the

"overwhelming weight of authority is to the effect that where the tenant has the use, [and] possession of structures in or under the sidewalk with the obligation of maintenance and repair, and permits such structures or devices to be out of repair as a result of which another is injured, the tenant is liable therefor to the injured party. This upon the theory of the tenant's negligence, and of his permitting and maintaining a nuisance—a place of danger upon a public walk."

I cannot agree however with the order reversing the judgment as to the tenant, Schubach. I have considerable doubt that the trial court must be held in error as to its finding that Schubach had exclusive possession of the chute. A tenant can have exclusive possession of the chute without necessarily having exclusive possession of the entire basement. However, I do not place my dissent upon that ground.

There appears to be no reasonable basis for making the tenant's liability in an action over by the city depend upon

the terms of the tenant's contract with the owner. I agree with the general statement of Mr. Chief Justice LARSON as quoted above that the tenant's liability is predicated upon his possession and use of the instrumentality and his duty to repair. But the duty to repair should not be held to be his duty to the *landlord* but rather the duty to the city and to third persons using the sidewalk. The tenant's contract with the owner regarding the ultimate duty of repair is a matter solely between them. It cannot divest either the tenant or the owner of any duty to the public which either might have to keep the door or sidewalk chute in repair.

The duty of the tenant to the city and to others using the sidewalk should be made to rest on a more fundamental basis than merely upon the contract between tenant and landlord. If the tenant is in *possession* of the door or chute through the sidewalk—and this need not necessarily be the exclusive possession—and through his *use* of the sidewalk door it gets out of repair and in a dangerous condition, he should not be permitted to leave the dangerous condition which his use has created and find shelter behind his contract with the landlord whereby the landlord assumes the legal obligation to repair. If the tenant has the exclusive possession of the building or the sidewalk chute or door, then in every case the law should impose a duty upon him, in so far as the city or persons using the sidewalk are concerned, of keeping the sidewalk door in repair. This duty should come without regard to any arrangement in which the landlord and tenant have agreed that the landlord shall bear the expense of the repairs. The same rule should be applied to a tenant who has the substantial but not exclusive use of the sidewalk door so that his failure to maintain it could be said to be negligence. The door through the sidewalk is there for his benefit as well as for the benefit of the landlord. His use of the sidewalk door, if he allows it to get out of repair, is a detriment to the public and creates a hazard for all users of the sidewalk. If he is negligent in the use of the door or in failing to timely make necessary repairs, he should be made to answer

to persons injured while using the sidewalk. His liability is based on his own negligence in relation to the users of the sidewalk and not upon his breach of contract with the landlord.

True, before the tenant can be held to be negligent for failing to repair a defective sidewalk chute, it must be shown that he had a duty to repair. But it is his duty to the *public*. And his duty to the public is not necessarily the same as his duty to the landlord, nor may his obligation to the public be held to be based solely upon his contract with the landlord. The evidence in this case shows a use of this sidewalk chute by the tenant, Schubach, which, if not exclusive, is at least so substantial as to place upon the tenant the duty, *as against the public*, to use reasonable care to keep the chute in repair. As against the public, a tenant may not use a private chute through the public sidewalk for his own benefit with complete indifference as to whether the chute is kept in repair. He may by contract with the landlord shift the ultimate burden to the landlord and his duty to repair may be somewhat commensurate with his use of the sidewalk door so that if his use were slight it may be difficult to show that he was negligent in failing to discover and repair a defect. But where the use is substantial and almost exclusive, as in this case, the tenant may be held to be negligent in not discovering and either himself repairing or having the landlord repair the chute so as to protect the public from the hazard thus created. The public is interested in having the city and the users of the chute keep it in a safe condition and a tenant may not use the chute with complete indifference to its state of repair merely because the landlord has agreed to keep it in repair. The evidence here shows a duty on the part of Schubach to repair. While Schubach might have a right of action over as against the landlord, he cannot escape liability as against the city because of any agreement between himself and the landlord.

I therefore believe that the judgment as to Schubach should be affirmed.