KENNECOTT COPPER CORPORATION, a corporation, Appellant,

v.

Rex GRAHAM, Appellee.

No. 4919.

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1955.

Calvin A. Behle, Salt Lake City, Utah (C. C. Parsons and A. D. Moffat, Salt Lake City, Utah, on the brief), for appellant.

Dwight L. King, Salt Lake City, Utah, for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Rex Graham against the Kennecott Copper Corporation to recover damages for injuries received from a fall into an open manhole in a sidewalk. The manhole was an opening into a conduit constructed under the sidewalk. Plaintiff's theory of the case was that Kennecott was the owner of the conduit and that it negligently maintained the manhole cover and that this negligence caused plaintiff to fall into the manhole to his injuries.

In its answer Kennecott denied that it owned the conduit or water line and denied that it was constructed by it and its predecessors for the purpose of carrying water from Copperfield down into Bingham Canyon and to its precipitation plant, where copper was removed from the water thus conveyed into the precipitation plant, as alleged in the complaint. It further denied the alleged acts of negligence on its part and alleged negligence on plaintiff's part. In a pretrial order the court framed the issues upon which the case was to be tried, as follows:

1. Whether the conduit in question is owned, operated or controlled by the Kennecott Copper Corporation in such manner as to impose upon them a duty to keep the manhole cover in repair.

2. Whether or not the defendant, Kennecott Copper Corporation, was in the exercise of ordinary and reasonable care and diligence in keeping the manhole cover in a proper state of repair.

3. If the Kennecott Copper Corporation is found not to have been in the exercise of ordinary and reasonable care and diligence, what, if any, are the damages that plaintiff is entitled to recover?

4. Whether or not the plaintiff was himself negligent and whether that negligence contributed to his injury.

A verdict upon which judgment was entered was returned for plaintiff.

In its appeal to this court Kennecott presents the issue that the court erred in denying its motion for a directed verdict and submitting the case to the jury for the reason that (1) plaintiff was himself negligent as a matter of law, and (2) there was no evidence of any breach of any legal duty owing by defendant to plaintiff.

■ The first ground needs little consideration. Plaintiff's negligence, if any, was submitted to the jury for its determination. By its verdict, it absolved him of negligence. This finding by the jury is amply supported by the record.

■ A consideration of the second assignment requires a careful analysis of the evidence. Copperfield is an unincorporated mining village in Bingham Canyon, Salt Lake County, Utah. It is located on a copper impregnated area. In 1923 or 1924 Utah Copper Company, Kennecott's predecessor in interest, acquired all the surface rights in the unincorporated village of Copperfield. This company constructed a concrete flume along the street, putting the sidewalk on top of it, and put in the manholes to gain excess to the flume. The company also constructed new brick

homes in the village, including the homes rented to Rex Graham and Jaturka. Salt Lake County made a payment to the company on account of this construction in the sum of $1,675. The county commissioner's letter stated that this payment was for the construction of a culvert to care for flood waters in Bingham Canyon. The petition of the company to the county commissioners for assistance stated that the conduit would be covered by a concrete sidewalk and that the Copper Company would construct and pay the expenses of the sidewalk. The sidewalk constitutes the top of the conduit and it is through this sidewalk that the manhole extends.

Kennecott acquired the surface ownership of this area from the Utah Copper Company in 1937, including the conduit built by Utah and the brick homes now rented to Graham and Jaturka. At present Kennecott owns the entire area of Copperfield except one lot and some school property. The construction of the conduit had a twofold purpose, first, to provide an outlet for sewage from the homes built along the conduit and, second, to carry storm and surface waters. All the waters running through this conduit are conducted through a vehicular tunnel into Bingham Canyon and are there precipitated in Kennecott's precipitation plants where all copper is removed therefrom. This precipitation began in 1937, the same year in which all the surface water carried into the conduit was filed on by Kennecott with the State Engineer for the State of Utah.

It is clear from the evidence that the construction of the conduit and the sidewalk thereon was to serve the needs of Utah, Kennecott's predecessor in interest. It owned all the surface rights as well as the houses in the village, save only the school building. It is also clear from the evidence that the construction of the conduit had a twofold purpose, first, to care for the sewage from the houses owned by the company and rented to its employees and, second, to take care of the surface and flood waters

originating in Copperfield. The Conduit has at all times been and is now being used for these two purposes. The construction of another conduit down the middle of the street was not for the purpose of caring for surface drainage and flood waters from Copperfield. It was apparently constructed to care for flood waters coming down from a canyon above Copperfield. The surface and flood waters from the Copperfield area continue to flow through the conduit in question as from the beginning. Such waters continue to be carried through a conduit to Kennecott's precipitation plants further down Bingham Canyon.

It may be conceded that although the entire area of Copperfield, save the exceptions heretofore noted, is private property owned by Kennecott, the street and sidewalk atop the conduit have been dedicated to the public by continued use and are under Utah Law public highways. But it does not follow therefrom as a matter of course that the conduit has been likewise dedicated and that Kennecott has surrendered to the public its private interest and ownership therein. This was one of the issues submitted to the jury and was resolved by it against Kennecott's contentions and we think there is evidence in the record to sustain such finding. As pointed out, all the waters going through this conduit are conducted through a vehicular tunnel into Bingham Canyon where together with other waters from below Copperfield they are precipitated through Kennecott's precipitation plants and all copper is removed therefrom. This has been done since 1937. We think it is also of some significance that in 1937 Kennecott filed on all the surface water in Copperfield and has since such time and does now own all such water. There is also evidence from which the jury could find that the water entering this conduit in Copperfield is impregnated with copper ore.

We think the jury could well conclude from the testimony of L. C. Jones, Kennecott's Chief Engineer, that the surface waters from Copperfield which

entered this conduit are impregnated with copper ore. On cross-examination, he testified that he had never sampled the water coming out of the conduit at Copperfield and had no knowledge whether said water contained copper. While he testified that he did not know how much copper the water carries as it goes through Copperfield, he did testify that the area on which Copperfield is located is a mineral area and that he could not say whether the area contained more copper bearing ore than any other area in the vicinity. This being so, it is reasonable to assume that the surface and flood waters from this mineral bearing area carry copper ore, as do flood waters from other portions of the mineral impregnated areas.

We further think the conclusion is warranted that while Salt Lake County exercised jurisdiction and control over the street and sidewalk in Copperfield, it exercised no such jurisdiction or control over the conduit. Mr. Bolic, the Road Supervisor for Salt Lake County, testified that it was his duty to keep the roads and sidewalks in good condition. He testified that he received his instructions orally from the county commissioner and that no one had told him that it was his duty to maintain the sewer covers. He testified that he observed the manhole cover in front of Mrs. Jaturka's house was broken;[1] that he wired it up and then called in a welder from the Salt Lake County Shops to weld it. This welding was done in a defective manner and caused Graham's injuries when later he stepped on the manhole cover. Bolic was not ordered to make this repair either by anyone in the county's employ or by Kennecott. Apparently he did this on his own volition when he saw its defective condition and realized that injury might result therefrom. Mrs. Jaturka first reported the broken manhole cover. She reported it to both Salt Lake County and to Kennecott. There is no evidence that either acted upon such information or directed anyone to repair the cover.

From all the above we conclude that the jury was warranted in finding that Kennecott was the owner of the conduit; that it had not relinquished its ownership thereof and that the conduit had not been dedicated to public use as had the street and the sidewalk.

Section 27–1–18; Utah Code Annotated 1953, dealing with sidewalks provides that "* * * flumes, pipes or other similar things below the grade shall be covered to grade, and shall be kept in good repair by the person in whose interest constructed so as not to be dangerous to pedestrians or to impair the safe and ordinary use of the highway." This Kennecott failed to do. A case somewhat similar on the facts is Salt Lake City v. Schubach, 108 Utah 266, 159 P.2d 149, 153, 160 A.L.R. 809, where the court stated, "When he constructs a coal hole, or makes some other special use of the public sidewalk, he undertakes to see that such structure is kept in proper condition so that no member of the public using such sidewalk is injured thereby. This duty is a continuing one, appurtenant as it were to the land, and liability for failure in duty cannot be delegated nor can it be terminated except by transfer of the land or surrender of the privilege of maintaining the structure."

Affirmed.

MURRAH, Circuit Judge (dissenting).

It is my view that the roadway, sidewalk and flume thereunder had been conclusively dedicated to the public, and were being maintained and operated by Salt Lake County for the beneficial use of the public at the time of the accident; that the County specifically assumed the duty of maintaining the manhole cover which caused the accident; that in its maintenance, the County undertook to repair it and did so defectively, proximately causing the injuries in this case. The copper company, having dedicated the roadway, the sidewalk and the flume to the public, and having as-

---

1. This was the defective manhole cover which caused Graham's injuries.

sumed no responsibility for their maintenance and care, was not legally liable to this plaintiff, and I would reverse the judgment.